## COMMONWEALTH *vs.* FANNY B. DRAKE.

Suffolk.   Nov. 26, 1877. — Jan. 1, 1878.   COLT & LORD, JJ., absent.

No exception lies to the refusal of a judge, on the trial of a criminal case, to grant a continuance, on account of the absence of a material witness.

On the trial of an indictment for procuring an abortion, there was evidence that there had been a miscarriage, effected by violence; that the woman upon whom the operation was performed, in company with another woman, went to the defendant's house for the purpose of procuring an abortion; that the former disclosed her condition to the defendant, and was alone with her for about fifteen minutes, her companion having been sent out of the room; that on the following night she experienced great suffering; that two days afterwards she and her companion left their lodging house and went to the defendant's house, where they remained two or three days, the former being under the defendant's care. A hack driver testified that he drove the two women from their lodging house to the corner of the street where the defendant lived, and left them upon the sidewalk, but did not know where they went. The defendant denied that either of the women was ever in her house. One of the women, who had always lived in another town, testified accurately as to the interior of the defendant's house, as was proved by other evidence. *Held,* that this evidence was sufficient to warrant a verdict of guilty. *Held, also,* that, even if the woman's companion could be considered as an accomplice, there was evidence from which the jury would be warranted in finding that her testimony was sufficiently corroborated.

INDICTMENT in five counts. The fourth count, upon which alone the defendant was convicted, charged that the defendant

on May 10, 1876, at Boston, " with force and arms, did unlawfully use a certain instrument, a more particular description of which is to said jurors unknown, by then and there forcing and thrusting said instrument into the body and womb of one Sarah E. Sullivan, she the said Sullivan being then and there pregnant with child, with intent to procure the miscarriage of said Sullivan."

In the Superior Court, before the jury were empanelled, the defendant moved for a postponement of the trial, upon the ground that a material witness was ill and unable to attend at the trial, and the evidence of a physician was given, to the effect that the witness in question was not able even to give his deposition. An affidavit was also presented in support of the motion ; and it was not denied that the evidence, if given according to the affidavit, would be material for the defence. *Dewey*, J., overruled the motion.

At the trial, it appeared in evidence that there had been a miscarriage, effected by violence. Lucy Wyman testified that she knew Sarah E. Sullivan to be pregnant, although unmarried ; that on May 10, 1875, she came to Boston at eight o'clock in the morning, engaged a room for herself and Sullivan, paid for it in advance, and then met, by appointment, Sullivan, who came in upon a later train, with one Bibber, the supposed father of the unborn child ; that they went to a hotel, where Bibber asked Sullivan if she did not want to go back ; to which she replied that she would not, and he gave her money ; that thereafter the witness and Sullivan went to the defendant's house, where Sullivan disclosed her condition to the defendant, and was alone with her for some fifteen minutes, Wyman being sent out of the room, and then both women went away. In answer to a question by the defendant's counsel, the witness testified that Sullivan said to her that the defendant had operated on her with something which she concealed with her handkerchief. The witness testified that they went to Mrs. Drake because she had found her card in the street some weeks before, and then had it in her pocket ; the card had on it only the name, " Mrs. F. B. Drake, M. D.," and the street and number of the house.

The witness further testified that Sullivan passed at their lodging a night of great suffering, and that on May 12, at 8.30

P. M., having been ordered from the house by the keeper thereof, they drove to the defendant's house, where they remained for two or three days, Sullivan being under the charge of the defendant. On the part of the defendant, it was denied that either said Sullivan or said Wyman was at any time in the house.

Albert P. Stickney testified that on May 12, at 8.30 P. M., he drove the two girls in his hack from their lodging to the corner of D Street and Broadway, in South Boston, where the defendant lived, and left them upon the sidewalk, but did not know where they went. He further said, upon cross-examination, that his order-book would state that he took these two girls only to the Albany Depot, and that, whenever he had spoken of this occurrence, he had said that he had taken them to the Albany Depot, until he testified before the coroner's inquest, when he first said that the destination was, in fact, South Boston ; and, in explanation for giving different statements, he said it was not customary to give correct information as to the places persons requested drivers to go, unless under oath.

This was the only evidence tending to connect the defendant with the procuring of the miscarriage, except that Wyman, who had always lived in Woburn, described accurately the internal arrangement of the house of the defendant, as appeared by other evidence. It appeared, however, that she had had abundant opportunity to confer with other witnesses and persons who had been in the house ; and had been in Boston and with leisure to make inquiries for a month before the trial ; but it did not appear that she had ever talked or inquired about the house.

After all the evidence for both sides was in, the defendant asked the judge to rule as follows : " 1. That Wyman was an accomplice ; that it would not be safe to convict upon her testimony, unless corroborated in a material point, and that it was not so corroborated ; and that it was unsafe for the jury to convict the defendant upon said count. 2. That there was not evidence to warrant a verdict of guilty upon said count."

The judge refused the second request, and, upon the first, instructed the jury as to what must be proved to constitute a person an accomplice, and that it would not be safe to convict on the testimony of an accomplice who was not corroborated ;

that it was for them to say whether Wyman was an accomplice in such a sense that her testimony should be wholly discredited, and that they would be warranted in considering, in corroboration of her statements, the testimony of Stickney, as also the fact that Wyman was able to describe accurately the interior of the defendant's house, and the fact, if they so found, that Sullivan and Wyman were taken into the house of the defendant on the evening of May 12. The jury returned a verdict of guilty on the fourth count; and the defendant alleged exceptions.

*H. W. Chaplin*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.

MORTON, J. These exceptions cannot be sustained.

1. The refusal of the presiding judge to grant a continuance or postponement was a matter within his discretion and not open to exception. *Commonwealth* v. *Donovan*, 99 Mass. 425.

2. The presiding judge properly refused to rule that there was no evidence to warrant the jury in finding the defendant guilty. It was proved that the miscarriage of Sarah E. Sullivan was effected by violence. The witness Wyman testified that she and Sullivan went to the defendant's house for the purpose of procuring the abortion ; that Sullivan disclosed her condition to the defendant and was alone with her for some fifteen minutes, the witness being sent out of the room ; that, on the night following, Sullivan suffered great pain, and that, two days after, they left the hotel and went to the defendant's house, where they remained two or three days, Sullivan being under the care of the defendant. This testimony, if believed, taken in connection with the fact that the defendant falsely testified that the two girls were never in her house, would justify the jury in finding the defendant guilty.

3. The instructions as to the corroboration of the witness Wyman were sufficiently favorable to the defendant. Upon the facts disclosed in the bill of exceptions, the witness does not appear to have been an accomplice of the defendant. *Commonwealth* v. *Boynton*, 116 Mass. 343, and cases cited.

But, if she was an accomplice, the instructions that the jury might consider " the testimony of Stickney, as also the fact that Wyman was able to describe accurately the interior of the defendant's house, and the fact, if they so found, that Sullivan

and Wyman were taken into the house of the defendant on the evening of May 12," as corroborative of her testimony, was correct.

The fact that the two girls went to the defendant's house on the evening of May 12 was material, the defendant having sworn that they were never in her house. Stickney testified that on that evening " he drove the two girls in his hack from their lodging to the corner of D Street and Broadway, in South Boston, where the defendant lived, and left them upon the sidewalk, but did not know where they went." This tended to corroborate Wyman upon an issue which was a material one. *Commonwealth* v. *Larrabee*, 99 Mass. 413. *Commonwealth* v. *Scott*, 123 Mass. 222. And, if the testimony satisfied the jury that the girls did go to the defendant's house on the evening of May 12, that fact would tend to corroborate Wyman upon other parts of the case.

The fact that Wyman's description of the internal arrangements of the defendant's house was accurate also tended to corroborate her testimony. As we have seen, the question whether Wyman had ever been in the house was a material issue. This distinguishes the case from *Commonwealth* v. *Bosworth*, 22 Pick. 397, cited by the defendant.

The fact that the interior of the house was as she described it was proved by other witnesses. This fact tended to show that she had been inside the house, and thus to confirm her testimony.

The argument that she had opportunity to confer with other witnesses, and thus obtain a description of the house, goes to the weight of the testimony and not to its competency as corroborative evidence.                *Exceptions overruled.*