[Crim. No. 256.   Second Appellate District.—April 17, 1913.]

# THE PEOPLE, Respondent, v. C. P. V. WATSON, Appellant.

CRIMINAL LAW—ABORTION—SUFFICIENCY OF EVIDENCE TO SUPPORT CONVICTION.—The evidence in a prosecution of a physician for producing an abortion is sufficient to sustain a verdict of conviction, where the testimony of the prosecutrix is corroborated by her paramour, who was an accomplice of the physician, and also by the testimony of another physician whose connection with the matter was such as to make it proper for the jury to determine whether or not he was an accomplice, and where the testimony of these two witnesses is corroborated by admissions of the defendant and other independent testimony.

ID.—ACCOMPLICE—CORROBORATION NEED NOT GO TO EVERY MATERIAL FACT.—The corroborating evidence necessary to furnish sufficient ground upon which a person charged with a crime may be convicted need not go to every material fact, but it is sufficient if it tends to connect the defendant with the commission of the offense.

ID.—DEFENDANT'S TESTIMONY IN CORROBORATION OF ACCOMPLICE.—A necessary corroboration may be furnished by the defendant's own testimony.

ID.—SUFFICIENCY OF CORROBORATING TESTIMONY.—Although more is required by way of corroboration than to raise a mere suspicion, yet the corroborating evidence is sufficient if it, of itself, tends to connect the defendant with the commission of the offense, although it is slight, and entitled, when standing by itself, to but little consideration.

ID.—HYPOTHETICAL QUESTION TO PHYSICIAN—HARMLESS ERROR IN REJECTING.—It is not prejudicial error, in a prosecution for abortion, to sustain an objection to a hypothetical question to a physician by which it is sought to show that drugs prescribed by the defendant would not tend to produce an abortion, when it is not claimed that drugs caused the abortion, but that they were given to relieve conditions caused by the use of an instrument, and the physician states, in answering another question, that the drugs would not have a tendency to produce an abortion.

ID.—WITNESSES — CROSS-EXAMINATION — ARGUMENTATIVE QUESTIONS.—After witnesses have been extensively cross-examined, objections to questions which are not pointed and direct to the matter sought to be elicited, but rather argumentative and by way of suggesting comparison, are properly sustained.

ID.—TRIAL—REMARKS OF COURT AS TO WITNESS OR TESTIMONY.—Where at a criminal trial the court, during a colloquy between the attor-

neys, referring to the prosecutrix, observes that "she is testifying
only to facts," but the court afterward remarks that "the jury will
remember that the testimony comes from the witnesses and only
from the witnesses," the error is not prejudicial.

ID.—REMARKS OF COURT OR COUNSEL—PRESUMPTION AS TO EFFECT ON
JURY.—Where the remarks of the court or of counsel are urged as
error, it must be assumed that the jury was composed of men of
fair understanding, and that they were not only able to distinguish
between argument and evidence, but that also they gave heed to
the instructions of the court.

ID.—MISCONDUCT OF ASSOCIATE COUNSEL FOR PEOPLE.—Misconduct of the
associate counsel for the people in referring to the defendant as
having brought out a "lot of trash," and insisting that the prosecu-
tion is "entitled to show the real facts," is not reversible error,
where the court instructs the jury to disregard statements of coun-
sel.

ID.—EVIDENCE—OBJECTION TO ADMISSION—NONPREJUDICIAL ERROR IN
OVERRULING.—When the defendant in a prosecution for abortion has
testified that he had three formulas filed at a drug store which he
gave to the prosecuting witness and that these were not all the
formulas he furnished the drug store, it is not prejudicial error to
overrule an objection to a question as to approximately how many
he had on file, especially when no ground of objection is stated.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order refusing a new trial.
Paul J. McCormick, Judge.

The facts are stated in the opinion of the court.

Davis & Rush, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy
Attorney-General, for Respondent.

JAMES, J.—Defendant was convicted of having by the use
of drugs and instruments caused an abortion, and was sen-
tenced to serve a term of three years in the penitentiary. This
appeal was taken from that judgment and from an order deny-
ing a motion for a new trial.

The prosecutrix, a girl of the age of sixteen years, testified
that at the time of the commission of the acts complained of
she was pregnant and had been so for probably four or five
months, and that on the ninth day of September, 1911, she

was brought from a neighboring town, where she resided, to the office of defendant in the city of Los Angeles by one Atkinson, who was the person with whom she had had the illicit relations. She testified that, after using an instrument upon her person and injecting some medicinal fluid, defendant had dismissed her, giving at the same time three certain prescriptions for additional drugs which were to be taken by her as directed; that she left the defendant's office with Atkinson and repaired to a lodging-house, and that Atkinson procured the drugs called for by the prescriptions, which she took at intervals during that night and up to the time when the abortion was accomplished, which event occurred early on the second morning after the first visit to defendant's office. Meanwhile, according to the testimony of the girl, as no expected results were obtained on the first morning after the treatment by defendant, she was taken back to the defendant's office by Atkinson a second time, and that there the same treatment was again administered and on the following morning the miscarriage resulted. Atkinson, who at the time of the trial was serving a sentence for the crime of rape committed upon this girl, was brought from the penitentiary and introduced as a witness and his testimony was to the same general effect, with some additional details, as that given by the prosecutrix. Atkinson testified that he had made the arrangements with defendant to have the abortion committed prior to the time that he brought the girl to defendant's office. Another physician, whom Atkinson had called to attend the prosecutrix after she had been subjected to defendant's treatment, also testified. His statement was that he first saw the girl on the morning following her visit to Watson's office, and that he had not then found it necessary to administer any treatment; that he was again called at a late hour on the night following, when he found the girl suffering with severe labor pains; that he noticed medicines which had been prescribed by Watson and gave some of these to the girl before delivery of the child was had. This physician had known Atkinson for a number of years and, as he stated, had been offered a large fee to cause the young girl to abort, which he had refused. There seems to have been somewhat of a studied effort on the part of counsel for both the people and defense to avoid a very close examination of the physician as to his

knowledge of the plan of Atkinson to take the girl to Watson, although counsel for defendant on this appeal now strenuously argue that, not only should the testimony of this physician be rejected because he was shown to have been an accomplice in the commission of the crime alleged, but also that the evidence tends to show that he was the chief offender. It must be said that there was a strong suggestion by way of inference to be drawn from this physician's testimony that he was possessed of the knowledge that Atkinson intended to have the operation committed upon the girl and that he, the physician, knew that he would be called, as he was called, for the purpose of rendering medical services to the young woman after the criminal acts had been committed. He admitted that he administered to the patient some of the drugs prescribed by Watson, which he said he did believing that the drug was quinine, and that he used it for the purpose of hastening the end of the girl's labor. Nevertheless, the evidence as to this physician's connection with the matter was such as to make it proper for the jury to determine whether or not he was an accomplice. As was said in the case of *People* v. *Creegan,* 121 Cal. 557, [53 Pac. 1083], touching a similar subject: "It must be assumed from the verdict that, upon the evidence before them, the jury found that he was not an accomplice, and, if this evidence was properly received, their verdict must be accepted as conclusive of the fact." Appellant relies upon the provisions of sections 1108 and 1111 of the Penal Code, the first of which provides that a person cannot be convicted for having procured an abortion, upon the testimony of the woman upon whom the offense was committed, and the latter section providing that a conviction cannot be had on the testimony of an accomplice, unless such accomplice is corroborated by other evidence tending in itself to connect the defendant with the commission of the offense. The latter section in conclusion provides: "and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof." These provisions furnish the basis for the contention of defendant that his conviction cannot be sustained because it was had upon the uncorroborated testimony of the woman and of Atkinson and the second physician, all of whom it is urged were accomplices in the commission of the alleged crime. Notwithstand-

ing what has been said regarding the relation of the second physician to the alleged crime, and accepting the assertion of appellant that each of the persons enumerated were accomplices, it will be well to make a further examination of the evidence to determine whether any of it furnishes corroboration to the testimony of the alleged accomplices. It was shown in evidence that up to the time the young girl left her home on the day she first visited defendant's office she had been in good health and had given no evidence of any condition indicating that an abortion had been attempted upon her. Immediately after the miscarriage was accomplished she was taken to a hospital and within two days thereafter was taken in charge by her parents and their physician and carefully examined and treated. There was testimony independent of that of any of the alleged accomplices sufficient to show that an abortion had in fact been committed very shortly prior to the time the parents took the girl in charge. Defendant in his own behalf testified, admitting that he had been visited by the girl and admitting that he had given three prescriptions for use in her case, but maintaining that the purpose of the giving of the same was innocent and that he had not used any instrument upon her. His statement was that the girl and Atkinson first informed him that they thought, because of a blow which the girl had received upon her abdomen, the unborn child had become dead and that they feared dangerous results from that condition which they wished him to give treatment to prevent. He testified that upon further talk he gained an admission from the girl that she had taken pills and used some instrument which Atkinson had procured for her prior to the time she visited defendant. He then stated that after receiving this information he instructed Atkinson to have the girl taken to a hospital, as she needed immediate attention, and had given the remedies prescribed, in good faith for the purpose of relieving her of pain which she complained of and benefiting her general condition without causing an abortion. There was also testimony introduced by the defense which tended to show that the remedies used were medicines which might ordinarily be used where a woman was giving birth to a child, whether naturally or prematurely. The evidence was further to the effect that none of the remedies, unless administered in very

large doses, larger than those prescribed, would of themselves cause a woman to abort. The druggist who compounded the prescriptions testified that at his store he had certain set formulas furnished him by the defendant, which were designated as "Dr. Watson's Nos. 1, 2, 3," and that these were the ones which the prescriptions given to the prosecutrix called for. There is no controversy between counsel but that the corroborating evidence necessary to furnish sufficient ground upon which a person charged with a crime may be convicted need not go to every material fact, but that it is sufficient if it tends to connect the defendant with the commission of the offense. As is said in *People* v. *McLean,* 84 Cal. 480, [24 Pac. 32] : "Although more is required by way of corroboration than to raise a mere suspicion, yet the corroborating evidence is sufficient if it, of itself, tends to connect the defendant with the commission of the offense, although it is slight, and entitled, when standing by itself, to but little consideration. (*People* v. *Melvane,* 39 Cal. 616; *People* v. *Clough,* 73 Cal. 351, [15 Pac. 5].)" It is also held that the necessary corroboration may be furnished by the defendant's own testimony. (*People* v. *Sullivan,* 144 Cal. 471, [77 Pac. 1000].) The testimony of the defendant admitting that he had prescribed for the girl, together with the testimony as to the uses to which the remedies prescribed might be put, and the other evidence referred to, must be said to have a strong tendency, aside from the testimony of the alleged accomplices, to connect the defendant with the commission of the crime charged. To conclude upon this branch of the case: If the second physician involved was not an accomplice, or if the question of his guilty participation in the act complained of was one for the jury to settle, as before suggested, then there was abundant testimony in support of the verdict of the jury; if it be conceded that this other physician was an accomplice, still there was evidence independent of the accomplices' testimony tending to show the guilt of defendant.

Defendant complains that it was error affecting his right to a fair trial for the court to sustain an objection to a hypothetical question asked of a physician. By this question it was sought to show that the drugs which made up the prescriptions given by the defendant to the prosecutrix would

not have had the effect of producing an abortion or any tendency so to do. This question was met by the objection that it did not contain a fair resumé of the evidence of the case. The objection being sustained, counsel for defendant then included in his next question the substance of the history of the young girl's experience as the evidence introduced by the prosecution showed it to have been, including the statement that some instrument was used upon her and some substance employed by way of injection. With the added assumed facts, the physician then testifying answered that the administration of the drugs which made up the list of prescriptions would not have had a tendency to produce an abortion, but would have had an opposite tendency. It is difficult to imagine how the defendant could have been prejudiced by the ruling. It was not claimed by the prosecution that the taking of the drugs called for by the prescriptions produced the abortion, but that these drugs were to be taken to relieve conditions brought on by the use of an instrument and the fluid injected. The defendant had the benefit of the answer of the witness that they would not have had that effect, even taken in connection with all of the other means alleged to have been employed by the defendant. Admittedly the use of an instrument and the injection of a fluid into the uterus of a pregnant woman would have had a decided effect in producing an abortion, and if it were true, as the physician testified, that the drugs mentioned in the prescriptions given by defendant would not have augmented the effect thereof, then the jury must necessarily have inferred that the drugs alone could not have been efficient by themselves to produce the miscarriage. If the ruling was erroneous, it was without prejudice for the reasons stated.

Defendant insists that the court unduly restricted him in his cross-examination of the prosecutrix, and also in the cross-examination of the physician who attended the girl immediately following her visit to the defendant's office. These assignments of error call for no extended discussion. Both of the witnesses referred to were extensively cross-examined, and furthermore the questions to which answers were refused and about which rulings complaint is made, were in the main not pointed and direct to the matter sought to be elicited, but rather argumentative and by the way of suggesting comparisons. At one point in the examination of the prosecutrix,

where argument was made upon an objection and counsel and the court were alternately replying to each other, the court made the observation, referring to the prosecutrix: "She is testifying only to facts." This statement of the court was objected to and counsel for defendant requested the judge to instruct the jury to disregard the statement, and the court thereupon addressing the jury said: "The jury will remember that the testimony comes from the witnesses and only from the witnesses." Considering the whole of the colloquy between the court and counsel which had to do with the question of the admissibility of certain testimony, it does not seem that the jury could have so far misunderstood the court as to assume that the judge was advising them that the girl was testifying to the truth, and any such impression it must be assumed was cleared from the minds of the jurors when the court admonished them that the testimony should come only from the witnesses; especially so because this admonition followed immediately the request of counsel that the jury be advised to pay no heed to the chance remark of the judge.

The alleged misconduct of the associate counsel who appeared with the district attorney on behalf of the prosecution is made the subject of an exception and claim that prejudice resulted which prevented the defendant from having a fair trial. As very frequently happens in a closely contested criminal cause, counsel on both sides indulged in considerable argument, some of which was not pertinent and altogether beside the issues to be determined by the jury. The associate counsel for the people referred in one instance to the defendant having brought out a "lot of trash" and insisted, as he said, that the prosecution was "entitled to show the real facts so no wrong impression may go out." At this juncture the court directed both counsel to sit down and the trial was proceeded with. In the instructions given by the court at the conclusion of the case, the jury were expressly told that the statements and arguments of counsel constituted no evidence in the action and that they in their deliberations were to disregard any such. If cases were to be reversed because of mere explosive utterances of counsel brought out in the heat of a trial, very few verdicts, in criminal cases especially, would be allowed to remain undisturbed. It must at least be assumed that the jury was composed of men of fair understanding, and

that they were not only able to distinguish between argument and evidence, but that also they gave heed to the instructions of the court as they were bound to do under their oaths.

The defendant when he testified admitted the giving of the three prescriptions which called for drugs by formula number, the formula having been filed previously by defendant at a drugstore for convenient use in filling his prescriptions. These were referred to as "stock formulas" and the defendant was asked whether these three composed all of such formulas furnished by him to the drug company, and he answered, "Oh, no." He was then asked how many others he had at that store, to which he replied: "I think I have; I don't remember just how many"; and he was then asked approximately how many, to which objection was made and overruled and an exception taken. No ground of objection was stated, which fact alone is a sufficient answer to the claim of error, but it may be added that no possible prejudice could have followed the answering of that question, because the witness had already answered without objection that he had other formulas on file at that drug store, but that he did not remember how many.

The court gave a somewhat lengthy and very complete charge to the jury in which all phases of the case proper to be considered appear to have been fully covered. The instructions defining accomplices seem to have sufficiently declared the law applicable to the evidence in the case and to have presented for defendant a view as favorable as he was entitled to.

Other alleged errors referred to in the briefs of counsel do not suggest matters entitled to serious consideration or further discussion. An examination of the entire record fails to disclose wherein the defendant has suffered any prejudice in his rights to a fair and impartial trial, or to show that his conviction was had upon insufficient evidence.

The judgment and order are affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 16, 1913.