[Crim. No. 1335. First Appellate District, Division One.—January 26, 1927.]

THE PEOPLE, Respondent, v. CHARLES LEE, Appellant.

[1] CRIMINAL LAW — ABORTION — EVIDENCE — CORROBORATION.—In this prosecution for violating section 274 of the Penal Code, by administering a drug to a pregnant woman with the intent to procure a miscarriage, the evidence was legally sufficient to meet the requirements of section 1108 of the Penal Code relating to corroboration.

[2] ID. — DEGREE OF CORROBORATION REQUIRED — EVIDENCE. — In such a prosecution, it is not essential that the person on whom the

2. See 1 Cal. Jur. 111; 1 R. C. L. 168.

abortion is procured be corroborated in respect to every fact and detail nor as to every material fact, but only as to some of the material facts which constitute a necessary element of the crime.

[3] ID. — METHOD EMPLOYED TO PRODUCE ABORTION — INTENT — CORROBORATION.—A necessary element in the crime of abortion is a criminal intent on the part of the accused to procure an abortion, and any testimony in addition to that of the prosecutrix tending to show intent is a sufficient corroboration of her testimony under section 1108 of the Penal Code, even though she be not corroborated as to the particular method employed to produce the abortion.

[4] ID. — SUFFICIENCY OF CORROBORATING EVIDENCE — WEIGHT. —.In a prosecution for procuring an abortion, although more is required by way of corroboration than to raise a mere suspicion, yet the corroborating evidence is sufficient if, of itself, it tends to connect the accused with the commission of the offense, notwithstanding the corroboration be slight and of itself entitled to but little weight.

[5] ID.—POSSESSION OF SURGICAL INSTRUMENTS—EVIDENCE—INTENT.— In this prosecution for violating section 274 of the Penal Code by administering a drug to a pregnant woman with intent to produce a miscarriage, surgical instruments found in defendant's possession, the use of which would have been probable in the subsequent treatment of the prosecutrix had she remained under defendant's care, were admissible in evidence as bearing upon the question of the intent with which the drug was administered.

---

(1) 1 C. J., p. 332, n. 81.   (2) 1 C. J., p. 332, n. 81.   (3) 1 C. J., p. 310, n. 10, p. 332, n. 81.   (4) 1 C. J., p. 332, n. 82.   (5) 1 C. J., p. 328, n. 32.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Michael J. Roche, Judge. Affirmed.

The facts are stated in the opinion of the court.

Austin W. Arnold and H. M. Anthony for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J.—Appellant was convicted of violating section 274 of the Penal Code, the charge being that he ad-

3.   See 1 Cal. Jur. 102; 1 R. C. L. 73.
4.   See 1 Cal. Jur. 114.

ministered a drug to a pregnant woman with the intent to procure a miscarriage, and on this appeal presents two points, contending, first, that the testimony of the woman upon whom the crime is alleged to have been committed was not corroborated as required by section 1108 of said code; and, secondly, that the court erred in admitting in evidence, over his objections, certain surgical instruments found in his apartment, wherein, it is claimed, the crime was consummated.

The following facts appear from the testimony of the woman upon whom the offense is alleged to have been committed: She was twenty-two years of age, unmarried, and on February 3, 1926, which was the date of the alleged commission of the crime, was from two to three months pregnant. On the morning of the day mentioned, having previously obtained appellant's name and address from a woman friend, she called on appellant at the address given for the purpose of having an abortion produced. Appellant, who admits that he is not a physician or surgeon, took her to a bedroom in the ten-room flat occupied by him, where she told him of her pregnant condition and asked him to give her "something." In reply appellant told her not to worry, that she was going to be all right after she had taken something; and thereupon, without the aid of instruments, he made a vaginal examination of her. She stayed in appellant's flat the remainder of the day, spending part of the time in bed, and about 6 o'clock that evening appellant gave her a capsule filled with white substance, which she swallowed. Remaining in the flat all night, she arose about noon the next day, and, while crying, asked appellant to allow her to go home, but he replied, "You can't go home now. You have to stay until you be all right." She then went back to bed, and appellant brought a hot-water bag which he placed on her abdomen. She again arose about 4 o'clock in the afternoon and, while sitting in a chair reading, two police officers entered the room, and, upon asking her in appellant's presence what she was doing there, she "told them everything." Thereupon she was taken to the emergency hospital, remaining there all night, and the next day was removed to another hospital, where, about midnight, her miscarriage occurred.

She further testified that at no time prior to going to appellant's flat had she taken any medicine, nor had any instrument been used upon her, either by herself or anyone else, for the purpose of procuring a miscarriage.

In corroboration of the foregoing testimony the prosecution produced as a witness a woman who, after stating that with her husband and·children she occupied two of the ten rooms in appellant's flat, testified as follows: That she rented the rooms in the flat for appellant, turning the rent over to him, and that some of the rooms were occupied by men; that she responded to the doorbell when the prosecuting witness arrived at the flat, and took her to appellant's apartments; that later, during the day, appellant told her that the prosecuting witness "was in a fix about three months," and that he "was going to help her get rid of it"; that the prosecuting witness stayed in the flat that night, but did not rent a room, nor was any rental collected from her.

Joseph M. Bruders, one of the police officers mentioned, gave testimony in further corroboration of the prosecutrix, stating that, with Corporal Shannon of the police department, he called at appellant's flat about 4:30 o'clock on the afternoon of February 4, 1926, and, after being admitted by a woman, went upstairs, where they saw appellant. They asked him if he was "Doctor Lee," and he replied that he was; that they then observed the prosecutrix sitting in the room, and, in the presence of appellant, held a conversation with her. They first asked her why she was there, and she replied that she was pregnant and had come there to be treated. The officers then inquired if the doctor had "done anything," and she stated that he had given her "a couple of pills." Thereupon she told them about having suffered pains, about crying, and that appellant had given her the hot-water bag to quiet her; furthermore, that appellant told her that "everything would be all right, that she was to stay there, it would be a short time until he would be through with her."

The record does not disclose that appellant made any denial or reply to the statements thus made in his presence by the prosecutrix, nor does it appear that he was asked about any of them except that when the prosecutrix stated that he "took up her clothes and examined her," the officers

asked him why he had done so, and he replied "to see if she was clean." The prosecutrix further stated during that conversation that appellant had not used any instruments.

The witness was thereupon allowed to identify certain surgical instruments found in appellant's apartments, and, subject to appellant's objections, they were received in evidence. Three of them, the evidence shows, were instruments used in making vaginal examinations, and another was made expressly to grasp the cervix of the uterus to bring it down into better view for examination.

In addition to the foregoing evidence, testimony was given by the hospital attendants to the effect that the age of the foetus passed by the prosecutrix as the result of the miscarriage was about three months; and that one capsule full of croton oil administered to a pregnant woman would cause an abortion.

[1] We are of the opinion that the evidence above narrated, taken as a whole, is legally sufficient to meet the requirements of the statute relating to corroboration. (Pen. Code, sec. 1108.) [2] Under the decisions it is not essential that the person on whom the abortion is procured be corroborated in respect to every fact and detail nor as to every material fact, but only as to some of the material facts which constitute a necessary element of the crime (*People* v. *Watson*, 21 Cal. App. 692 [132 Pac. 836]). [3] For illustration, an essential element in the crime here alleged is a criminal intent on the part of the accused to procure an abortion, and, therefore, any testimony in addition to that of the prosecutrix tending to show intent would be a sufficient corroboration of her testimony to bring the case within the statute, even though she be not corroborated as to the particular method employed to produce the abortion (*People* v. *Josselyn*, 39 Cal. 393). [4] Furthermore, although more is required by way of corroboration than to raise a mere suspicion, yet the corroborating evidence is sufficient if it, of itself, tends to connect the defendant with the commission of the offense, notwithstanding the corroboration be slight and of itself entitled to but little consideration (*People* v. *Watson, supra; People* v. *Thompson*, 16 Cal. App. 748 [117 Pac. 1033]).

The corroborating evidence here shows that beyond question the prosecutrix was pregnant; that on the day she

entered appellant's apartments he stated to the woman in charge of his flat that the prosecutrix was "in a fix about three months" and that he was going "to help her get rid of it." The next day, while still in appellant's apartments, and in his presence, the prosecutrix stated in substance that the appellant had given her "a couple of pills" for the purpose of procuring an abortion, which had caused her to suffer pains; and within forty-eight hours after having made these accusatory statements—which, so far as the record shows, the appellant did not deny—the prosecutrix suffered a miscarriage. In view of the legal rules hereinabove set forth we think the corroboration ample.

[5] The surgical instruments were admissible in evidence as bearing upon the question of the intent with which the medicine was administered (*Moore* v. *State,* 37 Tex. Cr. 552 [40 S. W. 287]; *State* v. *Barnes,* 75 N. J. L. 426 [68 Atl. 145]). Said instruments were found in appellant's possession at the place where the crime is alleged to have been consummated; and despite the admitted fact that the miscarriage of the prosecutrix was sought to be accomplished by administering medicine, it may be fairly inferred from the testimony showing the nature of the instruments and the use to which they are put, that their use would have been probable in the subsequent treatment of the prosecutrix if she had continued to remain under appellant's care.

Finding no error in the record, the judgment is affirmed.

Tyler, P. J., and Campbell, J., *pro tem.,* concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 24, 1927.