[Crim. No. 3365. Second Appellate District, Division One.—August 6, 1940.]

THE PEOPLE, Respondent, v. FLOYD TAYLOR, Appellant.

Leland E. Zeman for Appellant.

Earl Warren, Attorney-General, and Gilbert F. Nelson, Deputy Attorney-General, for Respondent.

WHITE, J.—Defendant was convicted of a violation of subdivision 3 of section 337a of the Penal Code, which declares it a crime to receive, hold or forward, "in any manner whatsoever, any money, thing or consideration of value, or the equivalent or memorandum thereof, staked, pledged, bet or wagered . . . upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever".

Trial by jury was waived and the cause submitted for decision upon the evidence adduced at the preliminary hearing, which consisted of the testimony of one of the arresting officers to the effect that he observed the defendant on the street for about ten minutes; saw him on three or four different occasions speak to men on the street; that "money would change hands and the defendant would go to a telephone in this wine store"; that he did not hear any of the conversation between the defendant and the men on the street; that before defendant left the two men they had looked at a National Scratch Sheet; that "when the money had changed hands the defendant started for the wine store. I went around the corner and entered the wine store. The defendant was dialing a number. I stood approximately two or three feet behind him and heard the defendant say '784, one to win, B. K. 786, one to win, A. R.' He just hung up the receiver when an unidentified man stepped up to him and said, 'I want one to win on 784.' The defendant said, 'O. K.' He dialed a number and as he was finishing dialing he turned around and saw me, hung the phone up and started to walk away, when I placed him under arrest." The officer further testified that a National Scratch Sheet of that date, containing notations and prices of previous races that day, was found on the defendant's person, together with $97, mostly in one-dollar bills, and several dollars in silver; that the number 784 appeared on the scratch sheet opposite the name of the horse Electrose running that day; that the number 786 referred to a horse named Canibal,

running in the same race; that after his arrest the defendant said that he took bets only on the street and did not go in any place of business; and that "during the conversation in the car with officers Gunn, Allen, myself and the defendant, we asked him who he was making a book for. He said that was Lollie's corner, and he used to make a book for him, and he was still making a book for him and no one else was on the corner. I asked—Officer Allen asked him how he made his bets. He said he laid off all his bets over the telephone as soon as he received them."

We are satisfied that the evidence is sufficient to sustain the conviction. There is no merit in defendant's claim that the *corpus delicti* was not established and that the trial court erred in admitting testimony concerning the conversation had between the police officers and defendant. Proof beyond a reasonable doubt of the *corpus delicti* is not required in order to receive evidence of admissions or confessions. All that is necessary is a *prima facie* showing. (*People* v. *Tuttle,* 27 Cal. App. (2d) 647 [81 Pac. (2d) 571]; *People* v. *Black,* 111 Cal. App. 90 [295 Pac. 87]; *People* v. *Harris, ante,* p. 129 [104 Pac. (2d) 529].) Manifestly, such a showing was made in the instant case. Appellant received money from several persons on the street. The officer testified that appellant was looking at a scratch sheet with two men, received money from them and went immediately to a telephone booth and phoned two bets. The inference is clear that appellant was phoning a bet for each of these two men. This is the inference the court drew and was justified in drawing. Add to the foregoing appellant's admissions made to the arresting officers and the inference of guilt drawn therefrom by the trial court certainly does no violence to reason. We cannot, therefore, substitute any finding of ours as to such ultimate fact for that reached by the jury, or as here reached by the trial judge without a jury. (*People* v. *Yant,* 26 Cal. App. (2d) 725, 733 [80 Pac. (2d) 506]; *People* v. *Latona,* 2 Cal. (2d) 714, 725 [43 Pac. (2d) 260]; *People* v. *Kneiling,* 127 Cal. App. 151, 153 [15 Pac. (2d) 561].) Before a verdict can be set aside it must clearly appear that upon no hypothesis whatever is there in the record substantial evidence to support the judgment. (*People* v. *Tedesco,* 1 Cal. (2d) 211, 219 [34 Pac. (2d) 467].) Moreover, appellant in the case before us did not take the witness stand, nor did he present

any evidence in his own defense, nor deny the inculpatory admissions made by him. The case of *People* v. *Rabalete,* 28 Cal. App. (2d) 480 [82 Pac. (2d) 707], so earnestly relied upon by appellant, is not applicable here. In the case just cited defendant made no incriminatory admissions, stoutly maintained his innocence, took the witness stand, and offered a defense. In the instant case, oral proof tending to establish the *corpus delicti* being of a substantial character, the proof of guilt beyond a reasonable doubt was not only corroborated and strengthened by the admissions of appellant to the police officers, but was thereby actually supplied.

The judgment and the order denying defendant's motion for a new trial are, and each of them is, affirmed.

York, P. J., and Doran, J., concurred.