[Crim. No. 4306.   Second Dist., Div. Three.   Apr. 7, 1949.]

THE PEOPLE, Respondent, v. MATTHEW FOUNTAIN et al., Defendants; CLARENCE HENRY JOSS, Appellant.

Ray L. Smith for Appellant.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendant was tried by a jury and convicted of grand theft. He appeals from the judgment and from the order denying his motion for a new trial.

The appeal should be dismissed because of the failure of counsel for defendant to comply with rule 15(a) of the Rules on Appeal, which in part reads: ''Each point in a brief shall appear separately under an appropriate heading, with subheadings if desired. Such headings need not be technical 'assignments of errors' but should be concise headings which are generally descriptive of the subject matter covered. . . .'' (22 Cal.2d 1, 12.) Defendant's brief not only does not state each point separately and under an appropriate heading but no points at all are stated. The Rules on Appeal have been in force nearly six years and it would seem that the profession by now should have some slight knowledge of their content. Notwithstanding, but solely because defendant has been sentenced to imprisonment and a client should not suffer because of the omissions of his counsel, we have examined the entire record to determine whether error was committed below. We find none.

As we cull defendant's briefs we gather that he wanted to claim that the corpus delicti was not established, that the evidence does not support the verdict, and that the testimony of an accomplice was not corroborated.

One Mueller operated a meat packing plant at Vernon. The yard of the plant was enclosed by a high wire fence with one gate which was kept locked at night. Fountain, the accomplice, was in the employ of Mueller as a sort of janitor and night watchman. He had no authority to sell meat. Defendant, a wholesale meat dealer, supplying hotels, restaurants, cafés and markets, had worked for Mueller about 1924 and apparently had been discharged for defalcations. He had purchased meat from Mueller's Vernon plant prior to 1947, but always in the daytime and from a salesman.

In the two months prior to May 30, 1948, between $7,000 and $8,000 worth of meat was stolen from the Mueller plant. In an effort to apprehend the thief, deputy sheriffs were stationed at the plant. On the morning of Friday, May 28, 1948, Fountain met defendant at a market in Los Angeles. They had not known each other prior to this time. He asked defendant if he wanted to buy some meat, saying that he needed money to make a payment on his car; that he was working at a packing house at night. He told defendant where it was located and to come out to it (the packing house). Defendant gave Fountain a card with defendant's telephone number on it. There was no talk as to the price of the meat. Immediately thereafter defendant went to the Mueller plant and looked it over.

On May 31, 1948, about 1 a.m., Fountain telephoned defendant and told him to come over. Defendant asked, "Is everything ready?" Fountain replied, "Yes, come right over." Almost immediately Fountain telephoned defendant again and told him that instead of going into the parking lot, he should come in the front gate with his lights out; that he, Fountain, was alone. Two deputy sheriffs were stationed at the plant at the time. One of them heard and testified to these telephone conversations. Fountain then moved an automobile to make a place for defendant to park his car backed against a loading dock, unlocked and opened the gate and turned out the lights in the yard. Shortly thereafter defendant arrived at the plant with a pickup truck. Upon reaching the gate he turned off the lights on the truck, drove into the yard and backed his truck against the loading dock. Fountain met him. The two went into the locker, took out three hindquarters and five loins of beef and put them on defendant's truck. Defendant then closed the door of the truck. Fountain did not receive any money from defendant that night, saying he would see him the next day. All movements of defendant

and Fountain were witnessed by the deputy sheriffs and testified to. As defendant was about to get into the truck to leave, he and Fountain were arrested. The value of the meat was about $400.

While defendant was being searched, he said to the deputy, "You don't have to worry about me. This is my first time." Later that night defendant told the officers that he had met Fountain at the market on Friday and had there "made arrangements for tonight," that he was angry at Fountain for getting him into a mess and that "If he had known that he couldn't get away with it, he wouldn't have done it at all." On June 2, 1948, defendant went to Mueller's office, told Mueller that he did not want him to testify against him and that he wanted to pay for the meat. Defendant told Mueller that he intended to buy the meat. Mueller said, "Clarence, you know 'you couldn't buy meat from the janitor at one o'clock at night." Defendant replied, "Yes, I did, but how are you going to prove it, that it was hot meat?" During the trial defendant told Mueller, "I want you to believe me that this is the first time I ever hauled meat out of there at night."

Defendant in his testimony admitted meeting Fountain on May 28, being at the plant on that day, the telephone calls, going to the plant about 1 a.m., taking the meat out of the cooler, and loading it on his truck. His defense was that he was buying the meat from Fountain; that he was about to pay for it when arrested with $455 which he had on his person at the time.

Proof of the facts related established the corpus delicti and is sufficient to support the verdict. ■ Personal property was taken from the possession of the owner without his consent and with intent to deprive him permanently thereof. This was larceny. Larceny in the amount of the value of the meat is grand theft. (*People* v. *Savage*, 66 Cal.App.2d 237, 242 [152 P.2d 240]; *People* v. *Lathrop*, 37 Cal.App.2d 341, 345 [99 P.2d 330]; *People* v. *Siderius*, 29 Cal.App.2d 361, 366 [84 P.2d 545].) ■ The corpus delicti is established when there is proof of (1) a person from whom the property may be taken, (2) an intent to take such property against the will of the owner, and (3) an act performed tending to accomplish the foregoing. (*People* v. *Harvey*, 25 Cal.App.2d 368, 371 [77 P.2d 487].) ■ The corpus delicti having been established by competent evidence during the trial, the admissions of the defendant were properly admissible. (*People* v.

*Housman,* 44 Cal.App.2d 619, 627 [112 P.2d 944]; *People* v. *Taylor,* 40 Cal.App.2d 324, 326 [104 P.2d 846].)

■ The testimony of the accomplice Fountain was sufficiently corroborated. In fact, if the testimony of Fountain is entirely eliminated, the evidence amply supports the verdict. Of the facts which we have recited, the only ones proven by the testimony of the accomplice were the conversations had in the market Friday, May 28, 1948. As we said in *People* v. *Malone,* 82 Cal.App.2d 54, at page 61 [185 P.2d 870]: "It is only necessary to supply corroboration which satisfactorily tends to prove the offense and to connect the defendant with the commission of that offense. (*People* v. *Lorraine, supra,* 28 Cal.App.2d 50, 53 [81 P.2d 1004]; *People* v. *Smitherman, supra,* 58 Cal.App.2d 121, 123 [135 P.2d 674]; *Commonwealth* v. *Drake,* 124 Mass. 21; *Reg.* v. *Boyes,* 121 Reprint 730; 1 C.J. 332, § 112.) The corroboration is sufficient if considered by itself it tends, in some way, to connect the defendant with the offense charged. (*People* v. *Negra, supra,* 208 Cal. 64 [280 P. 354]; *People* v. *Thompson, supra,* 16 Cal.App.2d 748 [117 P. 1033]; *People* v. *Watson,* 21 Cal.App. 692 [132 P. 836]; *People* v. *Lee, supra,* 81 Cal.App. 49 [252 P. 763]; *People* v. *Tinnin,* 136 Cal.App. 301 [28 P.2d 951]; *People* v. *Lorraine, supra; People* v. *Hickok,* 28 Cal.App.2d 574 [83 P.2d 39]; 1 Cal.Jur. 114, § 12.)'' (See, also, *People* v. *Trujillo,* 32 Cal.2d 105, 110 [194 P.2d 681].) Defendant's admissions alone constitute sufficient corroboration. (*People* v. *Malone, supra,* 82 Cal.App.2d 54, 63.)

The appeal is without merit.

The judgment and the order denying a new trial are, and each is, affirmed.

Shinn, P. J., and Wood, J., concurred.