[Crim. No. 4913.   Second Dist., Div. Three.   Mar. 20, 1953.]

THE PEOPLE, Respondent, v. MICHAEL STUART, Appellant.

Edward Rosslyn for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was accused in count 1 of grand theft of an automobile, and in count 2 of violation of section 503 of the Vehicle Code (driving automobile without consent of owner). Defendant waived trial by jury. The court found defendant guilty as charged in count 1, and not guilty as to count 2. Defendant's application for probation was denied, and he was sentenced to imprisonment in the state prison. Defendant appeals from the judgment.

The sole contention on appeal is that the corpus delicti was not established, and it was therefore error to receive evidence of extrajudicial statements of defendant.

George Cary, Jr., a witness called by the People, testified that on July 13, 1951, he owned a blue Jaguar automobile, motor number W23468, which had Nevada license plates on it, and also emblems of two clubs; about 3 p.m. on that date, he parked said automobile across the street from the showroom and offices of the Hornberg Jaguar Distributor on Sunset Boulevard in Los Angeles County; he left the keys in the ignition switch of the automobile, and gave one Eddie Wright, an employee of Hornberg, permission to take the automobile and do some work on it; he never saw the automobile again; he did not give defendant permission to take the automobile.

Officer Mansell, a witness called by the People, testified that he discussed the charges with the defendant, and that defendant's statements were made freely and voluntarily. Counsel for defendant then objected ''to this line of questioning as to any conversation with the defendant'' on the ground that the corpus delicti had not been established. The objection was overruled. The officer then testified that the conversation with defendant took place about 7:30 p.m. on February 1, 1952, in the presence of Officer Brooks and Officer Powers; Officer Brooks asked defendant if he knew why he had been arrested and the defendant said he did not; Officer Brooks asked defendant if he had ever ''earned [owned]'' a Jaguar car and he said he had not; Officer Mansell asked defendant when he went to Florida, and defendant said in July, 1951; said officer asked defendant if he remembered how he got to Florida, and defendant smiled

and stated that he thought the officer knew; the officer then asked defendant if he drove the Jaguar to Florida and defendant said that he had; Officer Brooks asked defendant where he obtained the Jaguar and defendant said he thought the officers knew where he had obtained it; Officer Mansell asked defendant if he got the car on Sunset Boulevard by the foreign car agency, and he said "Yes"; defendant stated that the car was in the street, the keys were in it, and it had Nevada license plates; he stated that he remembered some emblems on the front of the car and he disposed of them; he stated further that he drove the car to Florida the next day, and that nobody gave him permission to take it; Officer Mansell then asked defendant how he obtained title to the vehicle in Georgia, and defendant replied that he went down there and got a bill of sale and a Georgia car report; the officer asked defendant how he got the bill of sale in Georgia and he replied: "I am not going to put someone else in the middle on this. I had the car and you know I had it." The officer testified further that in answer to questions defendant stated that he sold the car to Waco Motors in Florida for $500 cash and a new M. G. roadster; he drove the M. G. back to California and sold it to a dealer on Ventura Boulevard.

Defendant testified that, in a conversation prior to his arrest, Officer Brooks asked him if he knew anything about a Jaguar, and he replied that he did not; the officer asked him if he had been in Florida and he replied that he had returned sometime ago; the officer then told him that he was under arrest; Officers Mansell, Brooks, and Powers took him to a room in a building downtown where they told him that they had the goods on him; they asked him if he had stolen a Jaguar on Sunset Boulevard and he told them he knew nothing about a stolen automobile; they asked him if he ever owned a Jaguar and he replied that he had; he told the officers that he had purchased a blue Jaguar in Atlanta, Georgia. He testified further that he purchased the Jaguar the first week in August, 1951, and paid $3,200 for it; at that time the automobile had Georgia license plates; he did not know that the automobile previously had Nevada license plates on it or that there was anything wrong with the title; he went to the Division of Re-registration in Georgia and got title to the automobile from the authorities there; he drove the car to Florida where he traded it for an M. G. automobile and $500 cash; he returned to California with the M. G. and sold it in August, 1951, for $1,553.50; he took a substantial loss

because he had an opportunity to go into business and needed the cash.

During cross-examination of defendant, the deputy district attorney showed defendant photostatic copies of some documents (People's exhibit 1) and asked him if the last three of those document were documents of title which he signed at the time he sold the Jaguar automobile and defendant answered: "That is right"; the deputy district attorney then asked the defendant if that was a Jaguar he sold, "the one that bears motor number W23468," and defendant replied that he was not familiar with the motor number. The deputy district attorney then asked him if he recognized the document as being the one he signed at the time he sold the Jaguar and defendant replied: "I recognize this as my signature, yes."

It appears to be appellant's argument that the corpus delicti must be established prior to the admission of extrajudicial statements. He asserts that, at the time evidence of the extrajudicial statements was received, there was no evidence of a permanent disappearance of the automobile and that the trial judge stated that the People had not established any unauthorized taking. ▮ It was not necessary that the corpus delicti be established before extrajudicial statements of the appellant were received in evidence. "The order of proof is within the discretion of the trial judge and a defendant may not complain because proof of the corpus delicti did not precede the evidence of an admission or confession." (*People* v. *Cucco*, 85 Cal.App.2d 448, 453 [193 P.2d 86].) ▮ "The corpus delicti may be proven by circumstances shown in evidence, or by inferences reasonably drawn therefrom." (*People* v. *Mainhurst*, 67 Cal.App.2d 882, 884 [155 P.2d 843].) ▮ In the present case, there was evidence that the owner of the automobile parked it on Sunset Boulevard and gave one Wright permission to take it and do some work on it; that the owner did not see the automobile again; that about three weeks later the defendant caused a blue Jaguar automobile, with the same motor number as the Cary automobile, to be registered in his name in Georgia; and that about one week thereafter defendant sold the automobile in Florida and signed documents transferring title to it. The evidence, independently of the extrajudicial statements, was sufficient to support findings that the owner intended to part with possession of his automobile for a limited time only, and for the specific purpose of having work done on it; that

the automobile was taken out of the state against his will and with the intent to deprive him permanently of it. All the elements of larceny were present. (See *People* v. *Fountain,* 91 Cal.App.2d 158, 161 [204 P.2d 639].) ▮ Larceny of an automobile is grand theft. (Pen. Code, § 487.) ▮ The corpus delicti was established, and it was not error to receive the extrajudicial statements in evidence.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.