[Crim. No. 6476.   Second Dist., Div. Three.   July 20, 1959.]

THE PEOPLE, Respondent, v. GRADY NEWMAN HALCOMB, Appellant.

Al Matthews for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—The information alleged that on or about April 5, 1958, the defendant did unlawfully own and have in his possession a firearm, to wit, a P 38 automatic pistol capable of being concealed upon the person, and said firearm having a barrel less than 12 inches in length, and the defendant having theretofore been convicted of felonies, to wit, grand theft and burglary on April 21, 1950, in Los Angeles County, California. (Violation of Pen. Code, § 12021.) It was also alleged therein that defendant had been convicted of escape in 1942 in San Bernardino County, and had been convicted of burglary in 1945 in Marin County.

In a trial without a jury, defendant was convicted. The allegations of previous convictions were found to be true. Defendant appeals from the judgment and sentence.

Appellant contends (1) that the corpus delicti was not established—it was not established as to the date of the alleged offense, or as to whether the firearm was capable of "firing or discharging a cartridge"; and (2) that the court

erred in "allowing into evidence statements of defendant before the corpus delicti was established."

Officer Spiller testified that he was a deputy sheriff and was so employed on or about April 5, 1958; he was one of the arresting officers; he was patrolling Santa Fe Avenue in a radio car and was checking the establishments on that avenue; about 5:10 a.m. he observed two vehicles which were parked, side by side, on the parking lot at the American Legion Hall on that avenue; the officers approached the vehicles and saw two men sitting in an Oldsmobile and saw one man lying on the seat of a "pickup" truck; the three men appeared to be asleep; the officers awakened two of them with comparative ease, but the defendant, who was intoxicated, "wouldn't wake up"; defendant was sitting on the passenger side of the two-door Oldsmobile; when Officer Spiller (witness) opened the door on that side of the Oldsmobile he saw "four rounds" of nine millimeter ammunition on the floor near defendant's feet; the officer shook defendant several times and awakened him; then the officer asked the owner of the Oldsmobile (Fry, one of the three men) for permission to search the vehicle; after receiving such permission the officer found a P 38 automatic pistol directly under the seat where defendant was sitting; the pistol was fully loaded—one round in the clip and one round in the chamber; the defendant and the two other men denied ownership of the pistol; the officers arrested the men and searched them; they found five rounds of nine millimeter ammunition in defendant's coat pocket and four rounds in his pants pocket; the nine millimeter size did "coincide" with the pistol; they found one round of .32 caliber ammunition on Campbell (one of the men), who had been sitting behind the steering wheel of the Oldsmobile; Officer Spiller (witness) asked defendant where he got the "bullets" for the gun; defendant replied, "Well, if you think I'm going to cop out to having that gun, you're crazy."

Officer Human testified that in a conversation with defendant on April 7, when Officer Aure was present, the defendant at first denied ownership of the gun, but later he said that he had picked up the gun "from the restroom of the Cracker Box Café, approximately a month previous to this time"—there had been a brawl at the café, and he later went into the restroom and found the gun and ammunition there; in that conversation, defendant also said that he was going to dispose of the gun.

There was evidence that defendant had been convicted of grand theft in 1940, escape in 1942, and burglary in 1945, as alleged in the information.

Defendant testified that he had been a bartender at the Cracker Box Café; he was arrested on April 15, 1958; he and the man (Campbell) who was with him in the automobile had been at the Cracker Box Café; he saw the gun after the officers found it; he did not purchase or borrow or have possession of the gun; he did not find the gun in the restroom of the café; he did not tell the officers that he found the gun in the restroom; the "bullets" which were in his coat pocket had been there about a week—he had found them in the café when he was "helping clean up that night."

Richard Campbell, a witness called by defendant, testified that before he was arrested he had been helping defendant clean the Cracker Box Café; he (witness) did not see anyone pick up ammunition at the café; he had a .32 caliber "bullet" in his pocket when he was arrested; he was carrying it as a good luck charm; he and Fry were arrested, but they were released.

Section 12021 of the Penal Code provides: "Any person who . . . has been convicted of a felony under the laws of the . . . State of California . . . who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison . . . or in a county jail . . . or by a fine . . . or by both."

Appellant argues, with reference to his contention that the corpus delicti had not been established, that there was no evidence that "a shot was or could be discharged from the gun." He cites section 12001 of the Penal Code, which provides: " 'Pistol,' 'revolver,' and 'firearms capable of being concealed upon the person' as used in this chapter apply to and include all firearms having a barrel less than 12 inches in length. This chapter does not apply to antique pistols or revolvers incapable of use as such." Appellant argues further to the effect that the prosecution did not prove that the gun was not an antique.

The P 38 automatic pistol, which was found under the automobile seat on which defendant was sitting, was received in evidence at the preliminary examination. It was stipulated at the trial that the People's case in chief might be submitted upon the transcript of the preliminary examination and that

the exhibits received at the preliminary examination (including the pistol) were received in evidence at the trial, and that the parties might introduce additional evidence. Also, at the trial, the attorney for defendant asked if the gun was in court. The clerk of the court said that he (clerk) had not ordered it but he could order it, and that it would take about five minutes. The attorney for defendant replied, "All right." It will be assumed that the pistol was brought into the courtroom and was observed by the trial judge. At the preliminary examination, the deputy district attorney said that the officer had indicated that he wanted to fire a shot from the gun for comparison purposes. Then the deputy asked if the gun might be released for that purpose. The municipal judge replied that he did not have authority to release the gun to the officer for that purpose. The pistol was loaded with nine-millimeter cartridges when it was found in the automobile. The four cartridges which were on the automobile floor near defendant's feet, and the nine cartridges which were in his pockets, were the same size as the cartridges which were in the pistol. There was no evidence that the pistol was an antique, and there was no assertion at the trial (or preliminary) to the effect that the pistol came within the exception or proviso, regarding antique pistols, as stated in the last sentence of said section 12001. That sentence, as above shown, was as follows: "This chapter does not apply to antique pistols or revolvers incapable of use as such." That provision or sentence is in section 12001 of the Penal Code. The information alleges a violation of section 12021 of that code. It thus appears that the provision regarding "antique pistols" is in a section that is separate and distinct from the section designated in the information. Also, section 12001 (which refers to antique pistols) is in a separate and distinct article of the Penal Code from the article in which section 12021 is set forth.

In *People* v. *James*, 71 Cal.App. 374 [235 P. 81], the defendant was accused of possessing a revolver capable of being concealed on his person. In that case the information was premised upon section 2 (of the former Dangerous Weapons Act). It was said therein (p. 379): "Section 15 of the act provides as follows: 'This act shall not apply to antique pistols or revolvers incapable of use as such.' Absence from the information of an averment of the fact that the revolver did not come within the exception did not, as claimed, affect its

sufficiency. It is not required to be negatived as it is a mere proviso [citation]."

In *People* v. *Priestley*, 17 Cal.App. 171 [118 P. 965], it was said at page 174: "In a proceeding based upon a penal statute, say the elementary works on pleading, the subject of an exception in the enacting or prohibitory clause of the act must in the charging paper be excluded by averment, but of any proviso or qualification in a separate substantive clause the information or indictment need take no notice."

*In re Lord*, 199 Cal. 773 [250 P. 714], was a habeas corpus proceeding based upon asserted insufficiency of a complaint charging a physician with unlawfully prescribing morphine. In section 8 of the act allegedly violated, it was stated that the provisions of the section shall not be construed to prevent a physician from prescribing in good faith for a user of a narcotic drug such substances as the physician may deem necessary for the treatment of such user. In section 8½ of the act, it was stated that a physician treating any user under the provisions of section 8 shall not prescribe more than four grains of morphine daily; provided, however, that a physician may prescribe for his patient who is suffering from some incurable disease any narcotic drugs mentioned in section 8 in such quantity as may be necessary. The petitioner therein (Lord) contended that the complaint, as to section 8, should negative the good faith of the physician, and, as to section 8½, the complaint should negative the provision regarding incurable disease. It was said therein, at page 777: "The authorities in this state are without conflict 'that such exceptions and provisos were to be negatived in the pleading only where they are descriptive of the offense or define it, and that where they afford matter of excuse merely, they are to be relied on in defense.'"

In *People* v. *Pierce*, 14 Cal.2d 639 [96 P.2d 784], it was said, at page 643: "By a long line of authorities in California, it has been repeatedly held that it is not necessary that a complaint, information or indictment shall specifically negative the various exceptions contained in the act describing the offense."

*In re Jingles*, 27 Cal.2d 496 [165 P.2d 12], was a habeas corpus proceeding relative to a misdemeanor conviction of possessing a revolver in violation of the Dangerous Weapons' Control Law. The court said, at page 499: "The complaint was clearly sufficient 'to give the accused notice of the offense of which he is accused' [citation] and it was not necessary for

the complaint to negative the exceptions specified in the statute.''

In the present case, the prosecution was not required to allege that the pistol was not an antique. The prosecution was not required to prove that which it need not allege. The trial judge could determine from his observation of the pistol whether it was new or old. As above stated, the pistol was loaded and the defendant was carrying cartridges that would fit the pistol. Under the evidence the judge could find that the pistol was a firearm. The contention that the corpus delicti had not been established is not sustainable.

Appellant contends further that ''the corpus delicti was not established as to the date of the alleged offense.'' It was alleged in the information that the crime was committed on or about April 5, 1958. Officer Spiller testified that he was a deputy sheriff and was so employed on or about April 5, 1958. He was then asked if he was one of the arresting officers, and he replied in the affirmative. Then he was asked when and where the arrest took place. He replied that it was at the American Legion on Santa Fe about 5:10 a.m. It is clear that the only date that was then being discussed was April 5, 1958. Also, Officer Human testified that he had a conversation with defendant on April 7th regarding the pistol. The evidence was sufficient to prove that the date of the alleged offense was on or about April 5, 1958. This contention with reference to the date of the offense is not sustainable.

Appellant also contends that the court erred in receiving evidence of statements of defendant before the corpus delicti was established. ''The order of proof is within the discretion of the trial judge and a defendant may not complain because proof of the corpus delicti did not precede the evidence of an admission or confession.'' (*People* v. *Cucco*, 85 Cal.App. 2d 448, 453 [193 P.2d 86] ; *People* v. *Stuart*, 116 Cal.App.2d 820 [254 P.2d 583].) This contention is not sustainable.

The evidence was sufficient to support the judgment.

The notice of appeal states that the appeal is from the judgment and sentence. ''Affirmance of the judgment carries with it affirmance of the sentence.'' (*People* v. *Perkins*, 147 Cal.App.2d 793, 798 [305 P.2d 932].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.