[Crim. No. 2205.   First Dist., Div. Two.   Nov. 28, 1941.]

THE PEOPLE, Respondent, v. TONY SOLANO, Appellant.

Alfred J. Hennessy for Appellant.

Earl Warren, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

STURTEVANT, J.—In the trial court the defendant was charged, by two informations, with the commission of two offenses of grand theft. To each charge he entered a plea of not guilty. For the purpose of the trial the two actions, numbered respectively 32,371 and 32,375, were consolidated and the actions were tried by the court sitting with a jury. The jury returned verdicts finding the defendant guilty on both charges. In each action the defendant made a motion for a new trial. The motions were denied. The court sentenced the defendant to imprisonment in San Quentin Prison and provided that the second sentence should run concurrently with the first. The defendant appealed from the judgments and from the orders denying him a new trial, and has brought up typewritten transcripts.

In his brief the defendant states that the judgments should be reversed for four reasons, stating them, but he argues and presents only one, "that the verdict is contrary to law." That is, he claims the case presented by the prosecution involved a conspiracy, that there was no evidence the defendant conspired, and that the evidence showed the prosecuting witness was an accomplice but his testimony was not corroborated. We think these claims may not be sustained.

It was the theory of the prosecution that the defendant concocted a scheme by which through certain tricks and devices he did steal and take from the prosecuting witness a large sum of money. That in the offense alleged in action number 32,371 he did so steal from C. M. T. Carvajal money in the sum of $1500 and in the offense alleged in action number 32,375 he did steal from Frederico Francisco money in the sum of $700. In action number 32,371 the offense was alleged to have been committed on December 28, 1940, and in action number 32,375 the offense was alleged to have been committed on March 20, 1939.

The prosecution called as its first witness Frederico Francisco. He testified as follows. He met the defendant in March, 1939, at Kearny and Jackson Streets. The witness gave defendant his address. Later the defendant called at the room of the witness. He brought with him a deck of cards. The witness testified he did not know how to play cards. The defendant showed him how to play draw poker. The defendant said he had $25, that he would give it to the witness and they would go to the Hansa Hotel and play cards with a man who had lots of money and win some of it. The witness testified that in the same conversation the defendant showed him a number of signals he would give the witness. One finger would indicate one pair, two fingers two pair, and three fingers would indicate three of a kind. A closed fist would mean a full hand. The defendant said he would stand behind the other player and give signals to the witness. Later the witness and the defendant went to Hansa Hotel, engaged a room, each paid one-half, both registered and they went directly to the room. The defendant gave $25 to the witness. A little later a Chinaman by the name of Chinn came to the room. The defendant produced a deck of cards. Chinn produced another deck. On the table were some poker chips. The witness did not know who produced them. In a few moments after the witness and defendant arrived, playing commenced. At first the witness and defendant played. After Chinn arrived the defendant gave up his seat and Chinn and the witness played. The defendant took a position back of Chinn and from time to time gave the witness the signals. The latter won many games. When the witness had won about $500, Chinn said he had no more cash and that he would get a check for $2500 cashed and then return. He went out. The witness and defendant remained. Later Chinn returned, exhibited a roll of bills and the playing commenced again. In about half an hour when playing one game Chinn "called the witness" and said " . . . if you have got any money all right, if you don't call this pot you lose all the money on the table." As to that hand defendant gave no signal. But when Chinn made the above mentioned statement the defendant said to the witness, "If you have money in the bank, go get it and call the pot or else you will lose all." He said, "Go ahead and call him." The witness, accompanied by the de-

fendant, went to his bank and drew out $700. The witness took his cards with him. Chinn remained in the room, but gave his cards to the defendant. The latter showed the hand to the witness. It was two jacks and three queens. The witness held three tens and two eights. After drawing the $700 out of the bank the witness and defendant returned to the hotel. Defendant gave Chinn his cards and the game continued. Here it must be remembered that the witness at all times claimed he did not know how to play draw poker except as told by defendant and the latter having seen Chinn's hand directed Francisco to "call the pot." Certainly word of mouth meant as much to him as a signal. The witness bet his $700. When the hands were shown Chinn had the better hand and took all of the money. The witness produced his bank book showing a withdrawal of $700 on March 20, 1939. At all times the defendant acted as game master. Each player paid him for chips and the game was played with chips.

The next witness called by the prosecution was C. M. T. Carvajal. He testified to a set of facts similar in many respects to those recited above. On or about December 27, 1940, the defendant and Pedro Templo arranged another game. It was held in the Rite Hotel. The defendant loaned Carvajal $30, and promised to watch and give him signals. The defendant furnished the cards and chips and acted as banker. He sat alongside of the Chinaman who was to play. That Chinaman was named Lee. He produced a roll of bills which he claimed amounted to $5000. The defendant put the roll in his box and gave the Chinaman chips. At a certain time in the game Carvajal was induced to go to his bank and draw out $1500. When he put it on the table the defendant took the money, placed it in the box and gave Carvajal chips. After the game was renewed the defendant gave a signal that the Chinaman held no hand. Carvajal bet all he had. He was called and when the cards were thrown down the Chinaman had a full house and Carvajal held only two aces. He had lost all his money. The Chinaman took all of the money and left.

The prosecution also called Carlos Carvajal, Jr., who was present when defendant and Pedro Templo called at his father's house on December 22, and December 28, 1940. He

gave testimony almost exactly the same as given by his father as to the times said calls were made.

After the prosecution rested the defendant took the stand as a witness in his own behalf. He admitted the testimony given by Francisco and Carvajal; except, he claimed each of those men suggested the poker games and that he did not. All else happened as testified by the complaining witnesses.

■ The defendant asserts that in each case the complaining witness was an accomplice and there was no corroboration. We think neither contention is supported by the record. Section 1111 of the Penal Code is as follows: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." As shown above neither Francisco nor Carvajal was "liable to prosecution for the *identical* offense charged against the defendant on trial in the cause in which the testimony of the accomplice . . . " was given. Neither had stolen or attempted to steal his own moneys. Therefore the offenses were not *identical*. (*People* v. *Troutman,* 187 Cal. 313, 318 [201 Pac. 928].) ■ But, assuming merely for the purposes of this opinion that they were accomplices, there was an abundance of corroboration. As we have shown above the testimony of Francisco and of Carvajal was corroborated in many particulars by the testimony of the defendant. The testimony of Carvajal was corroborated, at least in part, by the testimony of Carlos Carvajal, Jr. And, finally, the evidence in action number 32,371 was corroborated by the evidence in action number 32,375 and *vice versa,* that is, the facts recited above show another offense, similar in all respects, committed by the same defendant, and based on the same plan. (*People* v. *Thorne,* 10 Cal. (2d) 705 [76 Pac. (2d) 491].)

■ The defendant's claim that there was no evidence that the defendant conspired with Chinn or Lee is, in effect, the presentation of a false issue. Conspiracy was not a factor of the offense charged in the information. Any evidence on that subject came into the case incidentally. Furthermore, the

facts recited raise an inference that the defendant and Chinn in the one case, and the defendant and Lee in the other case, were acting jointly.

The judgments and orders appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.