# Fitch v. Commonwealth.

Oct. 30, 1942.

A. W. Mann for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE PERRY—
Affirming.

In April, 1941, the grand jury of Boyd county, Kentucky, returned an indictment against the appellant, Dr. Fitch, accusing him of the crime of abortion, as same is defined and made a felony by Kentucky Statutes, Section 1219a, subsections 1, 2, 3 and 4 (Kentucky Revised Statutes, Sections 436.020 and 435.040).

Omitting the merely formal parts of the indictment, its description of the acts constituting the crime charged is as follows, to-wit:

"That on the 10th day of February, 1941, * * * one Ruby Scott, a woman, was pregnant with child, the exact period and state of gestation being unknown to the grand jurors, but said Ruby Scott being advanced in a state of pregnancy about three months; and said defendant then and there having reason to believe and knowing that said Ruby Scott was then and there pregnant with child, did then and there unlawfully, wilfully and feloniously, with the intent to procure a miscarriage of said Ruby Scott, use an instrument and/or instruments in and upon said Ruby Scott, the name and/or names of which instrument or instruments are to the grand jury unknown * * * by then and there inserting said instrument and/or instruments upon, in, and against the vagina, uterus and private parts of said Ruby Scott; the grand jurors further state that such miscarriage and such using of said instrument and/or instruments in and upon the said Ruby Scott was not then and there necessary to preserve the life of said Ruby Scott; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the Commonwealth of Kentucky."

It should be noted that this indictment alleges every material fact essential to the offense as defined by the statute under which it was found, including that of the

non-necessity of the operation, performed with the intent to procure the miscarriage of the pregnant woman, to save her life, with the burden of proof to establish such non-necessity for saving her life resting on the prosecution. However, such absence of necessity to save life may be proven by circumstantial evidence, as by showing (as was here done) the woman was in normal condition when the medicine was administered to her or the operation was performed to produce the miscarriage and such evidence is sufficient to raise the inference, and on which to find the fact, that the production of the miscarriage was not necessary to save the woman's life. 1 Am. Jur. Section 52, pages 150 and 151 (see note 14—19 Ann. Cas. 636).

Such proof was given by the prosecuting witness when she testified as to her good health at and prior to the time of the operation.

Upon trial on the indictment, appellant was found guilty and his punishment fixed at $500 fine and one year's imprisonment in the penitentiary.

Complaining of this judgment, he has appealed, assigning and arguing as grounds for its reversal: (1) that the court erred to the prejudice of his substantial rights in overruling his motion for a directed verdict; (2) that the verdict is flagrantly contrary to the evidence; (3) that the court further erred in overruling his motion for a new trial both as originally filed and as amended, with special reference to the showing made as to newly discovered evidence; and (4) that the instructions given were erroneous.

As helpful in our determination of the merit of two of the errors assigned, that appellant was, upon the evidence heard tending to show appellant's commission of the offense charged by the indictment, entitled to a peremptory instruction and that the instructions were erroneous in failing to give the whole law of the case, to here observe that the offense of abortion, here charged, is not the common law offense of abortion, which was a misdemeanor when committed after a woman had become quick with child, that is, when the foetus had become animated. Until that stage of development had been reached by the foetus, the law took no notice of the agency by which a miscarriage was procured, if done with the woman's consent. However, such restricted common law rule was changed in this jurisdiction by the

passage of the Act of 1910, covering the several phases of this offense. By that act, Kentucky Statutes, Section 1219a, subsections 1, 2, 3 and 4 (Kentucky Revised Statutes, sections 436.020 and 435.040), the offense of abortion is defined and made a felony. Gregory's Kentucky Criminal Law, section 184; Commonwealth v. Allen, 191 Ky. 624, 231 S. W. 41, 16 A. L. R. 484.

By subsection 1 of this act, under which the present indictment was found, it is provided that:

"It shall be unlawful for any person to prescribe or administer to any pregnant woman, or to any woman whom he has reason to believe pregnant, at any time during the period of gestation, any drug, medicine or substance, whatsoever, with the intent thereby to procure miscarriage of such woman, or with like intent, to use any instrument or means whatsoever, unless such miscarriage is necessary to preserve her life; and any person so offending, shall be punished by a fine of not less than five hundred nor more than one thousand dollars and imprisoned in the state prison for not less than one nor more than ten years."

The penalty prescribed by this subsection 1 is thus made applicable where the conviction of the accused results from his committing with intent to procure a miscarriage, when not necessary to preserve the woman's life, the acts by which, as defined by the section, it may be effected, but without actually causing it; that is, the attempt to produce an abortion at any stage of pregnancy, or where one has reason to believe pregnancy exists, either by administering drugs or any substance or by the use of instruments, or by any means whatsoever, is made a felony offense, though a miscarriage does not result (Section 185, Gregory's Kentucky Criminal Law).

Also by subsection 4 of the act, it is provided that the consent of the woman to the means employed to procure an abortion shall be no defense and she shall be a competent witness in any prosecution under this act, and for that purpose she shall not be considered an accomplice, and her testimony, even when unsupported (under the provisions of the statute), shall be sufficient to support a conviction (I Am. Jur., section 53, page 151 and cases cited in notes 18 and 19).

The appellant was by the indictment, found under

subsection 1 of the act, charged with committing the statutory offense of abortion, as therein described, in Catlettsburg on or about February 10, 1941.

To establish his guilt of the charge, the commonwealth introduced Ruby Scott, the prosecuting witness, who was then an unmarried girl some nineteen years of age. She testified that on February 10, 1941, she went to the office of the appellant, Dr. Fitch, for the purpose of having him perform an operation to cause an abortion or miscarriage and that she reported to the doctor upon this visit that she was then pregnant and "about three months gone"; that the doctor thereupon agreed to perform the operation she asked him to perform and that he did perform it and that she then paid him his fee of $30 charged her.

She further testified that upon this occasion, after she had stated her then condition of pregnancy and her desire to have him perform an operation for the purpose of bringing about a miscarriage, the appellant told her that in performing such operation, he would use "some sort of paste," but that instead of using the paste, he used an instrument or instruments on her in performing the operation, which caused her a great deal of pain; that following this first visit to Dr. Fitch on Monday afternoon, she found it necessary to go back to his office Wednesday night, upon which visit she was accompanied by her neighbor and friend, Mrs. Sloan; that a second operation was then performed by the doctor, which was even more painful than the first. She further testifies that she again went to appellant's on the following Thursday night, when she was again operated on and caused even more excruciating pain than on the other occasions.

As to this, Mrs. Sloan, who accompanied her again on this third visit to the appellant's office, testified that at Ruby Scott's request she went into the operating room with her and witnessed the appellant perform this third operation; that on this occasion she saw the doctor lay Miss Scott down on a long straight table, that he had his instruments by his side, and that she saw him use these instruments in performing the operation on her, after which he packed her with cotton. She further testifies that she then helped Ruby Scott down the steps and took her to her home and upon ascertaining her condition and fearing that she was going to die, she had her taken to the hospital and called Dr. Prichard, her fam-

ily doctor, to visit her; that Dr. Prichard, after visiting her, called Dr. Culley into consultation with him.

Dr. Prichard and Dr. Culley testify that they found the girl with a temperature of about 104, a very fast pulse and a moderate amount of hemorrhaging from the uterus; that they decided to treat her conservatively with medicine; that their diagnosis was that she had had an incomplete abortion or miscarriage; that they did not know at just what stage she was, whether she had passed anything or most everything, so they gave her some suppository treatment, medicine to combat the infection she obviously had and also medicine to cause her womb to contract in an effort to make it evict this infected material, if there was any in there. They state that on Friday she passed some material from the vagina and that she remained in the hospital about a week, her temperature subsided, her hemorrhaging stopped and that, as far as this condition was concerned, it cleared up and she was then dismissed from the hospital. They further state that they saw no evidence of anything wrong outside of this particular trouble; that she did not have a bad heart condition and was otherwise perfectly healthy.

The appellant, Dr. Fitch, in his own behalf testified in substance that Ruby Scott came to his office and said she was pregnant and that she had taken various drugs and had tried to cause or bring on her periods, as she expressed it, and that, upon his examination of her, he found the mouth of the womb slightly open and the umbilical cord slightly down and that he told her he would have to treat that and that he packed the womb and gave her some medicine, thinking that it would stimulate contraction and that everything would pass away; that she was at his office a second and third time and left his office with instructions to call him up if everything did not pass away all right. Further he states that she came to him for the purpose of having an examination made and having him treat her and do whatever was necessary; that upon his examination made of her he found the umbilical cord had prolapsed down, indicating there was a dead foetus and that it was causing infection; that he didn't know how long it had been dead or what she had taken; that if the dead foetus is not removed, it simply decays and is bound to set up infection; that he was absolutely

sure her foetus was dead and that it would have been dangerous if it was not gotten rid of.

He states she told him she had taken drugs, including turpentine, to bring about a miscarriage and that before he took any steps to remove or cause the removal of the foetus from Ruby Scott, he was convinced professionally that the foetus was dead and that he administered the proper treatment indicated by her condition, that is given by the medical profession, and that the treatment he gave her and the removal of the foetus was necessary to save her life. When asked if he removed the foetus, he answered that he didn't succeed but that he got a portion of it and then "packed it in there"; that she was bleeding badly and he thought the rest of it would pass away spontaneously and that he told her to call him or come to see him.

Further the doctor was asked if it was not customary with physicians, when a patient in the condition Miss Scott was in presented herself for an examination and treatment, to consult other physicians before they did anything, to which he replied, "Not necessarily so."

Upon cross-examination appellant was asked if he had been convicted of a felony, to which he replied that he had been convicted for failing to keep his narcotic records in shape; that he had lived that down and was trying to live right and that that didn't have anything to do with his case. The court instructed the jury that this was not substantive evidence, but could be considered by them as bearing upon the credibility of the witness.

Such being the substance of the testimony offered upon the trial, we are of the opinion that the appellant was not entitled to a peremptory instruction. If the testimony of Dr. Fitch, that he had performed the operation because he deemed it necessary to save the woman's life, was not contradicted he would have been entitled to a peremptory instruction but the testimony of the girl is that she went to the doctor's office for the sole purpose of procuring an abortion and that he performed the operations necessary to produce an abortion. Therefore, the case narrows down to the one question of which of the conflicting stories told is true. The jury, after hearing all the evidence, chose to believe the prosecuting witness. Since her testimony is competent and not objected to, the verdict should not be overturned for

lack of evidence, since she gives a candid and straightforward account of what transpired and of the operations performed on her and it was the right of the jury to accept it as true, if they so desired. The weight and sufficiency of her testimony, which is corroborated by the testimony of her friend, Mrs. Sloan, is for the jury's determination.

Clearly the testimony given by the girl as to the operations performed on her by the appellant when she was pregnant and with the intent to produce a miscarriage, pursuant to his agreement with her to perform such an operation, was evidence of such character and substance as would not authorize or justify the court's sustaining the defendant's motion for a peremptory instruction and is also a sufficient answer to appellant's contention that the jury's verdict rendered, finding him guilty, was flagrantly contrary to the evidence.

As to the third assignment of error, that the court prejudicially erred in overruling defendant's motion for a new trial both as originally filed and as amended, with special reference to the showing made as to newly discovered evidence, we find no error committed by the court in denying the motion for a new trial.

Appellant argues in support of this contention that after the trial of the case M. B. Collingsworth, a former mayor of Catlettsburg, who was bondsman for Dr. Fitch, made an affidavit in which he set forth statements concerning a conversation which he avers he had with Mrs. Nim Campbell, with whom Ruby Scott lived at the time of appellant's alleged commission of the offense. The affidavit does not show that Mrs. Campbell was unavailable through the period intervening between the return of the indictment in April and the trial of the case in the following January, which fact in itself shows such a palpable lack of diligence in discovering this evidence as amply justified the court in refusing to grant a new trial upon such ground. The granting of a new trial is a matter of judicial discretion and there is nothing here, under the circumstances stated, to show any abuse by the court of this discretion.

The last of the errors assigned is that the instructions given were erroneous. This complaint is based on the language employed in instruction No. 1, that if the jury "shall further believe from the evidence beyond a reasonable doubt that such miscarriage and such using

of such instruments in and upon the said Ruby Scott was not *then and there* necessary to preserve the life of said Ruby Scott (italics ours)", they should find defendant guilty. Appellant insists that the words "then and there" were erroneous and prejudicial to his substantial rights, in that they did not follow the language of the statute in defining and describing this statutory offense.

Obviously this argument urged is without merit and specious, in that the offense was charged in the indictment as committed "then and there" at a given time upon the body of Ruby Scott and merely covered the offense when it occurred. The jury by the instruction were told that they must believe that the offense so charged occurred "then and there," the time charged in the indictment and proven by the testimony. We are unable to conceive how any prejudice could have been done the appellant from the employment of this expression "then and there" in the instruction or how it was in anywise objectionable.

We are therefore led to conclude that no error is shown to have been committed upon the trial of the case prejudicial to appellant's substantial rights and that, the testimony of the prosecuting witnesses being ample to support the jury's verdict finding appellant guilty, the judgment of the trial court based thereon should be and it is affirmed.