[Crim. No. 726.   Fourth Dist.   Feb. 9, 1950.]

THE PEOPLE, Respondent, v. LAURA K. MINER et al.,
Appellants.

William F. Reed, Thomas Whelan and Ann Wansley for Appellants.

Fred N. Howser, Attorney General, Stanford D. Herlick, Deputy Attorney General, James Don Keller, District Attorney, and Ronald T. Abernathy, Deputy District Attorney, for Respondent.

BARNARD, P. J.—In count one of an indictment the appellants were charged with the crime of conspiracy in that during the period from June 1, 1947, to October 8, 1948, they conspired together to commit the crime of abortion. Six overt acts were alleged in that connection. In count two Miner and Cordon were charged with the crime of abortion in that on September 3, 1948, they wilfully and feloniously employed an instrument and other means on the person of a certain woman with the intent to procure an miscarriage, the same not being necessary to preserve her life. In count three Miner and Cordon were charged with a similar offense upon the person of another woman. In counts four, five, six and seven Page and Cordon were charged with similar crimes in connection with four other women. A jury found all of the appellants guilty as charged in the respective counts, except on count two which was dismissed. They were all sentenced to the state prison for the term prescribed by law, the sentences as to each one to run concurrently. They have each appealed from the judgment of conviction and from an order denying a new trial.

The appellants Miner and Page were chiropractors occupying certain premises in San Diego. From June 9, 1948, to September 22, 1948, these premises were under observation by an investigator for the district attorney's office. During that period a large number of women were observed coming to and going from these premises.

On the evening of September 19, 1948, two investigators entered these premises with the intention of installing a dictaphone. While there they observed various objects in the operating room, including an operating table covered with a sheet, and a hose and connection similar to one which was admitted into evidence. Before they accomplished their purpose they heard a lady's voice say "There is someone here," and then a voice called out "Laura" in a questioning tone. The investigators then left the premises through a window. The next morning a notice was found posted on the

door of the office reading: "Office closed indefinitely. Hours by appointment." On that morning Page and Cordon were seen in animated conversation on the front porch. Shortly thereafter a car with several women in it was seen leaving the rear of the premises. During the morning a number of women came to the door and some remained until Cordon returned at 12:30 p. m. They entered with her and then left within five minutes. In the afternoon of that day Miner and Cordon were seen driving out of the alley in the rear of the premises.

Photographs were taken of the interior and exterior of these premises, which were introduced in evidence. Various objects taken from the premises were also introduced. An operating table was found in what had been a kitchen, standing near the sink. A rubber hose with an attachment thereto, which was identified as an "aspirator," was seen on the sink during the investigation, but was missing when the other objects were removed. An "X-ray mirror" was found installed between the office and the reception room which permitted anyone in the office to see who was in the reception room, although a person in the reception room could not see into the office. A pressure tank and pump was also found in this operating room. The city plumbing inspector testified that the use of this would increase the normal water pressure, that such equipment should be inspected to prevent back siphonage into the water system, and that the installation of this equipment on these premises had never been inspected by his department. The only reasonable inference is that this device was used to increase the efficiency of the aspirator. There is evidence that an aspirator is an arrangement whereby a stream of water creates a vacuum and produces suction. Many of the things taken from this operating room had blood stains upon them. Speculums and heating pads were among the things found there. A witness identified a speculum as one he had repaired for the appellant Miner. A witness testified that she came to the premises on the afternoon of September 20, 1948, for the purpose of having an abortion performed, and that another lady entered just ahead of her. The appellant Cordon called the other lady into the office and closed the door. In a short time the other lady reappeared and left the premises. Thereupon this witness was taken into the office where she was told by Cordon that no business was being done that day; that they were having a "slight investigation"; that they would have to be very careful; and to

come back the next Monday if she still wanted anything done. She returned on September 27, and found a note on the door reading: "Office closed indefinitely. Gone to the East Coast."

The women directly involved in counts three to seven, inclusive, testified as to what occurred on the respective counts. The procedure was about the same in each instance. The woman went there for an abortion; was interviewed by the defendant Cordon; was told that the fee for an abortion was $100; and an appointment was made. When the witness returned $100 was paid but no receipt was given. The witness was then taken to a resting room and requested to remove her clothing. Later she was taken to the operating room, placed on the operating table with her feet in the stirrups, and a sheet placed over her knees so that she did not have a full view of all that was done. The doctor then came in and proceeded with the work. They all felt pain or had cramps, and saw or heard water running out of the tap into the sink. Most of them observed a rubber tube similar to the one introduced in evidence, which was connected to the faucet in the sink, and some felt a scraping sensation in the abdomen and heard a suction sound. After the work was finished the woman was taken to a resting room and given an electric heating pad. After a short rest they were allowed to go home.

There was some additional testimony with respect to the particular counts. The women involved identified Cordon as the nurse, and Miner or Page as the doctor. On Count three the woman testified that she was taken to these premises by a man named Brett, and that he picked her up later; that she gave the nurse a sum of money but did not know the amount; and that this money was given her by Brett. Brett testified that he went to these premises first and made the appointment; that he then brought the woman to the premises and gave her $100 in currency; and that while she was in the office he waited about 45 minutes for her and then took her home. On Count four the woman testified that before going to the premises she discussed the purpose of her visit and the amount of money involved with her husband; that her husband met her there on September 17; that pursuant to instructions given her by Cordon she returned on September 20, 1948; that Cordon then met her and asked her to leave because they were expecting some investigators. Her husband testified that he had discussed with her the purpose of her visit to this office and the amount of the fee, and that by prior arrangement he met her there on September 17. On

Count five the woman testified that she went to her appointment accompanied by two friends, and that Dr. Page said she "didn't recommend abortions every six months." She further testified that Page had treated her in a similar manner about six months before, and that she had paid Cordon another $100 on that occasion. The two friends testified that they took this woman to these premises on or about September 1, 1948, and that after driving around they came back later and picked her up. On Count six, the woman testified that she was accompanied to the premises by a certain friend. This friend testified that she went there with this woman and knew her purpose in going there; that while she was waiting in the reception room she saw several other women go into the office; and that she observed that the door between the reception room and the office was locked after people entered. On Count seven the woman testified that on August 30, she went to these premises accompanied by her sister. Her sister testified that she knew the object of the visit and that they had discussed the subject of money prior thereto; that she accompanied her sister to the premises; that her sister went into the office and the door was closed; and that a little later her sister asked her to leave and stay away for an hour.

For the purpose of showing intent, evidence was introduced of four other similar offenses in June and August, 1948. In each instance the testimony of the women involved disclosed the use of the same plan and method of operation as that shown by the testimony on the various charges of the indictment. As against the appellant Miner, the testimony of another chiropractor was introduced. He testified that before the trial Mrs. Miner came to him and told him he would probably be called as a witness at the trial and asked his help, and that he told her he would be willing to help her if she was not guilty but not otherwise. He testified: "I then asked her point blank, 'Are you guilty?' She hung her head, did not answer me and pulled out several pictures of her children."

Except with respect to the conspiracy count, it is not contended that the evidence, if it is to be accepted, is not sufficient to support the verdicts. It is contended, however, that there was not sufficient corroboration of the testimony of the women involved in the other counts. It is well settled that such corroboration is necessary but that it need not cover precisely the same facts, and that it is sufficient if it tends to connect the defendant with the offense and goes

farther than creating a mere suspicion of guilt (*People* v. *Ramsey*, 83 Cal.App.2d 707 [189 P.2d 802] ; *People* v. *Wilson*, 25 Cal.2d 341 [153 P.2d 720] ; *People* v. *Malone*, 82 Cal.App. 2d 54 [185 P.2d 870] ). It appears here beyond question that the appellants were operating some sort of business in these premises. With respect to each count there was the testimony of one or more witnesses who accompanied the abortee to the premises; and several of them furnished the money. In addition to the testimony of these other witnesses and the evidence of the articles found and removed from the premises it appears, without conflict, that these premises were equipped with a device to increase the water pressure for some purpose; a device was installed so that people in the reception room could be seen from the office while the reverse was not true; there is independent evidence that when a woman was taken to the operating room the door was locked; and when it was discovered that an investigation was in progress the place was closed and appointments were cancelled. The appellants did not take the stand and no attempt was made to explain or give a reason for any of these circumstances. In our opinion, ample corroboration here appears.

█ Some contention is made that the evidence is not sufficient to show a conspiracy, as charged in the first count. It is argued that none of the overt acts alleged in the indictment was proved. We are unable to understand this contention since five of the six overt acts which were alleged were sufficiently established by the evidence. The fact that none of these overt acts was sufficient, in itself, to demonstrate guilt is immaterial. The plan, an actual working together, and all of the elements of a conspiracy clearly appear from the evidence.

█ It is contended that the deputy district attorney was guilty of prejudicial misconduct in talking to two jurors. During the trial, a matter was taken up out of the presence of the jury. It then appeared that during a recess one of the jurors entered the district attorney's office and asked a question of the deputy who was conducting the trial concerning the instructions that the court might give. The deputy told him that he knew nothing about the instructions, that he had nothing to do with that, and that this would come from the court. On another occasion, this attorney met a woman juror in the hall of the courthouse during a recess. She remarked that her little girl was sick and that she had been phoning to find out how she was getting along. The deputy remarked

"I am terribly sorry. I hope everything is all right." The court correctly denied a motion for a mistrial, and instructed the jury to be more careful in the future. No possible prejudice appears. (*People* v. *Goodale,* 33 Cal.App.2d 80 [91 P.2d 163].)

A number of errors are assigned in connection with the admission of evidence. ▮ Evidence of similar offenses was received for a limited purpose under proper instructions, and no error appears in that connection. (*People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Zatzke,* 33 Cal.2d 480 [202 P.2d 1009].) ▮ It is argued that a hose with aspirator attached, and a "biopsy curette," were improperly admitted in evidence since they were not taken from the premises involved. They were new articles secured from a supply house which were introduced for illustrative purposes, and there was ample evidence that they were exactly similar to instruments seen in the operating room of these premises. ▮ It is argued that the court erred in refusing to admit testimony offered to show that there is no positive and absolute way, for at least four months after conception, to determine whether or not pregnancy exists. This was immaterial since the belief and purpose of the appellants and not the actual fact of pregnancy is involved. (*People* v. *Ramsey,* 83 Cal. App.2d 707 [189 P.2d 802].) With one exception, all other errors cited in this connection are either unsubstantial or not supported by the record.

▮ It is argued that the court erred in allowing in evidence a statement made by the appellant Cordon, which was made in July, 1936. At that time the appellants Cordon and Miner were both working in another office in San Diego which, as the appellants state in their brief, "belonged to the coast-wide Rankin ring, (See *People* v. *Rankin, Watts-Byrne, Ross,* 10 Cal.2d 198 [74 P.2d 71].)" This statement was taken in connection with that case and was taken in the presence of appellant Miner, who gave a similar statement. This statement contained a full admission and description of the way the business of causing abortions was carried on in that office, the system thus used being practically the same as that used in this case, including the use of suction created by water pressure. A police officer testified that he interrupted the appellant Miner on one of these abortions at that office in 1936, and that he was present at a conversation in which both Cordon and Miner participated, and in which they both admitted what they had been doing. This statement, and the

officer's testimony, were offered for the purpose of showing intent, association of the parties at that time, and the admissions and declarations of a coconspirator at that time. They were admitted as against Miner and Cordon and not as against Page, and the jury was instructed not to consider this evidence in any respect as against the appellant Page. It not only had a bearing on the question of intent with respect to the abortion counts but also in relation to the conspiracy charge, insofar as the appellants Cordon and Miner were concerned. While this evidence was unnecessary, in view of the strong evidence of guilt otherwise produced, it was not rendered inadmissible by the lapse of time which appears. (*People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924].)

It is next urged that the court misdirected the jury in matters of law. Error is first assigned in that the court refused to give an instruction requested by the appellants which stated that the gist of the offense denounced in section 274 of the Penal Code is that the instrument or other means must be used with intent to thereby procure the miscarriage of the woman in question, and that the necessary intent could not exist unless there was actual knowledge on the part of the defendants, or belief upon their part, that the woman in question was pregnant. It is argued that this instruction follows the direct holding in *People* v. *Murphy*, 60 Cal.App. 2d 762 [141 P.2d 755], should have been given, and was not otherwise covered. In that case, there was evidence that the doctor operated upon the woman for another purpose entirely and the court held that the evidence was not sufficient to show anything to the contrary. In the instant case the appellants did not take the stand, no explanation of any kind was offered, and the matter of intent was left entirely to be drawn from the other facts and circumstances. Section 274 was read to the jury, and the jury was adequately told that in order to constitute the offense in question it was necessary to find that an instrument or other means had been used with the intent thereby to procure the miscarriage of the women in question. Having been told that this intent was essential, it was not necessary to tell the jury in different language that the intent could not exist if there was no such intent.

It is next contended that the court erred in refusing two instructions to the effect that the woman suffering an abortion is a coconspirator and her testimony must be corroborated. Whether or not such a woman could be such a coconspirator, which is doubtful under recent decisions, the

matter is of no importance here since the court fully, and at length, instructed the jury as to the necessity for corroboration.

It is next contended that the court erred in giving an instruction in which the term "overt act" was defined, and in which the jury was told that the law requires that at least one overt act be expressly alleged in the indictment, and that at least one of the overt acts alleged must be proved in order to support a conviction for conspiracy. It is argued that the instruction should have told the jury that at least one overt act must be alleged in the first count which charges conspiracy, and must be proved with respect to that count. The instruction related to the matter of a conspiracy which affected only one count, and we are unable to see how the jury could have been misled or how prejudice could have resulted. Overt acts were not involved in any other count, and they were both alleged and proved in connection with the first count.

Objection is made to an instruction giving the usual rule that each of the persons forming a criminal conspiracy, while he is a member thereof, is liable for every act and bound by the acts and declarations of each and all of the conspirators done or made in pursuance and furtherance of the conspiracy, and that every person joining a conspiracy after the formation thereof is similarly liable for the acts and declarations of the other conspirators thereafter. While it is conceded that this is a correct statement of the law it is argued that it was prejudicial to the appellant Page in view of the evidence which was admitted with relation to things done by Miner and Cordon in 1936. While these earlier acts had a bearing upon the intent of two of the parties, the jury was carefully instructed that they should not be considered as against the appellant Page. There is nothing to indicate that the jury disobeyed this instruction.

It is contended that the court erred in instructing the jury that a woman submitting to an abortion is not an accomplice. No error appears. (*People* v. *Stone*, 89 Cal.App. 2d 853 [202 P.2d 333] ; *People* v. *Wilson*, 25 Cal.2d 341 [153 P.2d 720].)

Error is assigned in the giving of an instruction stating that corroboration may be found in evidence which is slight when considered alone, but which is sufficient to create more than a suspicion of guilt. It is argued that the instruction should have been given in other language which is suggested. Not only was this instruction correct (*People* v. *Wilson*, 25 Cal.2d 341 [153 P.2d 720] ; *People* v. *Ramsey*, 83

Cal.App.2d 707 [189 P.2d 802]), but the court gave another instruction essentially in the language suggested by the appellants.

Objection is made to an instruction limiting the purpose for which evidence of other offenses had been received, telling the jury that it was not to consider that evidence for any other purpose, and telling the jury to view with caution any such evidence. It is not pointed out wherein any error exists, the instruction was beneficial to the appellants, and no prejudice appears.

It is next contended that the court erred in giving an instruction relating to the incident previously described where the appellant Miner was asked by another chiropractor whether or not she was guilty and made no answer. The instruction told the jury that if it should find from the evidence that the appellant Miner, on this occasion, failed to make denial in the face of an accusation expressly directed to her under conditions which fairly offered her an opportunity to reply, and under certain named circumstances, her silence might be considered against her as indicating an admission on her part that the accusation thus made was true. The instruction further pointed out that evidence of any such accusatory statement was not received for the purpose of proving its truth but only to explain the conduct of the accused in the face of it, and that the entire matter should be disregarded by the jury unless it should find that her conduct at the time indicated an admission that the accusatory statement was true. The only argument made is that the appellants do not consider this as an accusatory statement. The matter was properly left to the jury as to whether or not it was an accusatory statement, with proper instructions as to its necessary elements. (*People* v. *Wade,* 71 Cal.App.2d 646 [163 P.2d 59]; *People* v. *Cooper,* 81 Cal.App.2d 110 [183 P.2d 67].)

Finally, complaint is made of an instruction on the right of court and counsel to comment on the failure of the appellants to explain or deny any evidence against them. No error is pointed out and the instruction seems to be correct. (Const., art. I, § 13; *People* v. *Platnick,* 71 Cal.App.2d 767 [163 P.2d 766].)

The evidence does not support the appellants' argument that the only fair inference therefrom is that they were acting as doctors ordinarily act in treating the ills of women, and that there is nothing unusual in the fact that large

numbers of women came to their office, which is a situation found in many doctors' offices. It may be observed in this connection that while it may not be unusual for many women to visit a doctor's office, it would hardly be usual, where the purposes are legitimate, for the doctor to cause a fee of $100 to be collected in each case before he sees the patient; to have an appointment made and the patient prepared for the operating table before he sees her; to have the doors locked when the patient goes in; to have a pressure water system surreptitiously installed; to have a device installed so that persons in the office may view those in the reception room without those in the reception room being able to see into the office; and to cancel appointments and close the office upon the first suspicion that police officers are investigating the place. The evidence clearly supports the verdict, and we find no errors which are sufficiently prejudicial to require a reversal.

The judgment and order, as to each appellant, is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied February 21, 1950, and appellants' petition for a hearing by the Supreme Court was denied March 9, 1950. Carter, J., voted for a hearing.