[Crim No. 5338. In Bank. May 15, 1953.]

THE PEOPLE, Respondent, v. OSWALD PIERRE GALLARDO et al., Appellants.

Fred N. Howser, Leonard Wilson, Glenn A. Lane, Ralph R. Sleeper and Robert P. Dockeray for Appellants.

Edmund G. Brown, Attorney General, Frank Richards, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan and Albert K. Lucas, Deputy District Attorneys, for Respondent.

GIBSON, C. J.—Defendants Gallardo and Glynn were charged in four separate indictments, embracing a total of twenty-two counts, with performing abortions in violation of section 274 of the Penal Code,* conspiracy to induce abortions and attempts to perform abortions. The cases were consolidated for trial. Six counts were dismissed, and Gallardo and Glynn were convicted on the remaining counts, namely, twelve counts of abortion, one of conspiracy and three of attempted abortion.† They have appealed from the judgments and sentences, and from an order denying their motions for a new trial. █ No appeal lies from the sentences, and the appeals therefrom must be dismissed. (Pen. Code, § 1237; *People* v. *Tallman,* 27 Cal.2d 209, 215 [163 P.2d 857]; *People* v. *Clark,* 106 Cal. App.2d 271, 273 [235 P.2d 56].)

As grounds for reversal defendants contend that the judgments are not supported by substantial evidence and that errors were committed in admitting evidence and instructing the jury.

### SUFFICIENCY OF THE EVIDENCE

Glynn, who is not a doctor, owned and operated an establishment, consisting of a hospital and medical offices, which was under surveillance by the police during the month of March, 1950. On the last day of the month the police entered the premises while Gallardo, a licensed osteopathic physician and surgeon, was attending a woman patient in an operating room. Upon hearing the noise made by the officers, Gallardo removed an instrument from the woman's body, threw the instrument into a washroom, and ran out into the backyard

---

*Section 274 of the Penal Code provides: ''Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than five years.''

†Of the other defendants named in the indictments, one was convicted but did not appeal; one was acquitted in another trial; the cases were dismissed as to one; and two pleaded guilty.

where he was arrested. Glynn was arrested shortly thereafter in an alley at the rear of the property. He then had in his possession over $2,000 in cash and a piece of paper which contained the names of three of the twelve women upon whom abortions were assertedly performed. The police also obtained from the hospital and from Glynn records containing the names of all but two of the twelve women.

When Gallardo was arrested he told one of the officers "I never should have come here today. . . . I have tried many times to withdraw from this association. . . . At one time I tried to get money for a health plan for my people. . . . I talked to Henry Glynn about it, and we got together and this is a result of that. . . . I had to go ahead with it because of my financial commitments. . . . I was hooked. . . . "

The twelve women named in the abortion counts testified, and it can be inferred from their testimony that each of them was pregnant and desired to terminate her pregnancy, that she went to Glynn's establishment for the purpose of obtaining an abortion and that someone there used instruments on her in order to accomplish that purpose. The women, with one exception, made some or all of the arrangements for their operations with Glynn. The one who made no direct contact with him dealt with Mrs. Chelini, a defendant who pleaded guilty. Eight of the women paid Glynn in advance sums ranging from $200 to $600. Two women paid Mrs. Chelini, who testified that she gave part of the money to Glynn. The remaining two paid $450 each to Mrs. Schroeder, who accompanied them to Los Angeles and who was also a defendant pleading guilty. Eleven of the women who visited the hospital were relieved of their pregnancies, and Gallardo was using an instrument on the twelfth one when the police entered.

Gallardo, testifying in his own behalf, admitted that he made a physical examination of the reproductive organs of eleven of the women and that in some instances he performed operations which required incisions in the lower portion of the abdomen. He denied, however, that anything he did was for the purpose of procuring a miscarriage. Gallardo testified that he did not examine or treat the other woman, but she identified him as the person who performed an abortion upon her.

Defendants contend that the evidence is insufficient to support convictions on the counts charging abortions in that the prosecution failed to establish that the operations were not necessary to preserve life within the meaning of the excep-

tion contained in section 274. ▉ We have found no case directly in point in California, and we adopt the rule followed by the weight of authority which requires the prosecution to establish as a part of its case that the operations were not necessary to preserve life. (See *Fitch* v. *Commonwealth*, 291 Ky. 748 [165 S.W.2d 558]; *State* v. *De Groat*, 259 Mo. 364 [168 S.W. 702, 706-707]; *State* v. *Montifoire*, 95 Vt. 508 [116 A. 77, 79]; 153 A.L.R. 1218, 1266-1277.) ▉ The fact that an operation was not necessary to preserve life may be shown by evidence that the woman was in good health before the operation, and her testimony as to her physical condition is sufficient on this issue. (*People* v. *Emery*, 79 Cal.App. 2d 226, 231-232 [179 P.2d 843]; *Murphy* v. *Board of Medical Examiners*, 75 Cal.App.2d 161, 166 [170 P.2d 510]; *People* v. *Card*, 40 Cal.App. 22, 24 [180 P. 53]; see *People* v. *Balkwell*, 143 Cal. 259, 262 [76 P. 1017]; *People* v. *Malone*, 82 Cal.App.2d 54, 59, 61 [185 P.2d 870]; 153 A.L.R. 1218, 1270.) All of the women except one testified that they were in good health, thus meeting the burden of the prosecution with regard to the statutory exception. Gallardo admitted that he performed an operation on the twelfth woman but testified that the purpose of the surgery was to remove her appendix and that it was not a "therapeutic abortion." The jurors obviously disbelieved Gallardo's statement that the operation was not intended to induce a miscarriage, and the evidence justifies a finding that an abortion was performed and that it was not necessary to preserve life.

▉ A defendant charged with abortion "cannot be convicted upon testimony of the woman upon or with whom the offense was committed, unless she is corroborated by other evidence." (Pen. Code, § 1108.) ▉ Corroboration is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the woman is telling the truth.* (See *People* v. *Miner*, 96 Cal.App.2d 43, 49-50 [214 P.2d 557]; *People* v. *Malone*, 82 Cal.App.2d 54, 61 [185 P.2d 870]; *People* v. *Lorraine*, 28 Cal.App.2d 50, 53 [81 P.2d 1004]; *People* v. *Lee*, 81 Cal.App. 49, 53 [252 P. 763]; *cf. People* v. *Wilson*, 25 Cal.2d 341, 346-347 [153 P.2d 720]; *People* v. *Barclay*, 40 Cal.2d 146,

*Some of the cases state that the evidence must be "inculpatory," but this is used merely as another way of stating that it must tend to connect the defendant with the crime. (See *People* v. *Shaw*, 17 Cal.2d 778, 803-804 [112 P.2d 241]; *People* v. *Morton*, 139 Cal. 719, 724 [73 P. 609]; *People* v. *Reingold*, 87 Cal.App.2d 382, 392-393 [197 P.2d 175].)

156 [252 P.2d 321]; *People* v. *Trujillo,* 32 Cal.2d 105, 111 [194 P.2d 681].) It has been held that the corroborative evidence need not by itself establish that the crime was committed or show all the elements thereof, but it must relate to some act or fact which is an element of the offense. (See *People* v. *Barclay,* 40 Cal.2d 146, 156 [252 P.2d 321]; *People* v. *Yeager,* 194 Cal. 452, 473 [229 P. 40]; *People* v. *Robbins,* 171 Cal. 466, 469-471 [154 P. 317]; *People* v. *Josselyn,* 39 Cal. 393, 400-401; *People* v. *Lee,* 81 Cal.App. 49, 53 [252 P. 763].) It must create more than a suspicion, but it may be sufficient even though slight and entitled to but little consideration when standing by itself.† (See *People* v. *Wilson,* 25 Cal.2d 341, 347 [153 P.2d 720]; *People* v. *Kempley,* 205 Cal. 441, 455-456 [271 P. 478].)

 A woman who has submitted to an abortion is not an accomplice of the persons charged with procuring or conspiring to procure the miscarriage. (*People* v. *Buffum,* 40 Cal.2d 709, 723 et seq. [256 P.2d 317]; *People* v. *Wilson,* 25 Cal.2d 341, 346 [153 P.2d 720]; *People* v. *Clapp,* 24 Cal.2d 835 et seq. [151 P.2d 237].) The testimony of any one of the twelve women can be corroborated by that of a witness who was an accomplice, for example Gallardo or Chelini, and the testimony of the accomplice can be corroborated by that of any one of the women. (*People* v. *Wilson,* 25 Cal.2d 341, 346 [153 P.2d 720]; *People* v. *Clapp,* 24 Cal.2d 835, 837 et seq. [151 P.2d 237].) Moreover, any one of the women upon whom an abortion was performed can act as a corroborating witness with respect to matters which she may have observed that are relevant to another count charging the performance of an abortion upon a different woman. (*Cf. People* v. *Jones,* 36 Cal.2d 373, 378 [224 P.2d 353] [victims of separate thefts by false pretenses]; *People* v. *Owens,* 28 Cal.2d 191, 193 [168 P.2d 945] [different accomplices of defendant in separate illegal wagers].)

---

†Although it has been said that corroboration is not sufficient where the circumstances are consistent with the innocence of the accused (see, e.g., *People* v. *Davis,* 210 Cal. 540, 555 [293 P. 32]; *People* v. *Kempley,* 205 Cal. 441, 461 [271 P. 478]; *People* v. *Robbins,* 171 Cal. 466, 470 [154 P. 317]), the more recent decisions have held that whether the corroborating evidence is as compatible with innocence as it is with guilt is a question of weight for the trier of fact (see *People* v. *Henderson,* 34 Cal.2d 340, 347 [209 P.2d 785]; *People* v. *Estes,* 99 Cal.App. 2d 745, 747 [222 P.2d 454]; *cf. People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]).

As to three of the charges, there is sufficient corroborative evidence without resort to the testimony of the women named in other counts, but as to each of the remaining charges there is not sufficient corroboration unless it can be found in the testimony of the women involved in the other eleven counts. It is not necessary to recite the testimony referred to with respect to the three counts first mentioned because we have concluded that the independent testimony of the twelve women, fortified in some instances by the testimony of Gallardo and Chelini, is mutually corroborative in that it shows that each abortion was committed in a similar manner following the same procedure. ▆▆▆ Although the testimony of one woman that a person performed an abortion upon her is not of itself sufficient to corroborate the testimony of a second woman that the same person committed an abortion upon her (*cf. People* v. *Darby,* 64 Cal.App.2d 25, 30-32 [148 P.2d 28]; *People* v. *Thompson,* 69 Cal.App.2d 80, 90-91 [158 P.2d 213]), it has been held that there is sufficient corroboration if the independent testimony of the women shows that each abortion was committed in a similar manner. (See *People* v. *Reimringer,* 116 Cal.App.2d 332, 337 [253 P.2d 756]; *People* v. *Kendall,* 111 Cal.App.2d 204, 210-211 [244 P.2d 418]; *People* v. *Allen,* 104 Cal.App.2d 402, 411 [231 P.2d 896]; *People* v. *Collins,* 80 Cal.App.2d 526, 534-535 [182 P.2d 585]; *cf. People* v. *Coltrin,* 5 Cal.2d 649, 656, 662 [55 P.2d 1161]; *People* v. *Smitherman,* 58 Cal.App.2d 121, 123 [135 P.2d 674].) In *People* v. *Kendall, supra,* the women described the same premises, the same instruments and the same abortifacient, and the court pointed out that one of the reasons for accepting the evidence as corroboration is that the testimony of two people who independently went through the same procedure tends to establish the credence of both. (111 Cal.App.2d at p. 211.) In the Allen case, among other similarities, each of the women stated that she had been blindfolded. Under statutes similar to section 1108 of the Penal Code it has likewise been held that there is sufficient corroboration where each witness independently reveals the commission of a crime which is uniform in plan and pattern with the crimes described by the other witnesses. (*People* v. *Chait,* 69 Cal.App.2d 503, 516 [159 P.2d 445] [Pen. Code, § 1110]; *People* v. *Solano,* 48 Cal.App.2d 126, 130 [119 P.2d 381] [Pen. Code, § 1111]; *cf. People* v. *Thorne,* 10 Cal.2d 705, 708 [76 P.2d 491]; *People* v. *Peete,* 28 Cal.2d 306, 317 [169 P.2d 924].)

As we have indicated, the independent testimony of each of

the twelve women upon whom defendants are charged with having performed abortions, considered together with the testimony of Gallardo and, as to two counts, with the testimony of the accomplice Chelini, shows that defendants followed a similar plan or procedure as to each of the abortions. Under all of the counts the testimony shows that Glynn did not perform any of the operations himself but arranged for Gallardo to do the work and that Gallardo, who admitted examining or operating on eleven of the women, performed or participated in each operation but did not make any of the initial contacts or arrangements and left such matters to Glynn. In each instance it appears that an abortion was performed in Glynn's establishment. Each woman was placed upon an operating table, and instruments were used on her. Eleven of the women testified that they met Glynn prior to their operations and made some of the arrangements with him, and the accomplice Chelini testified that she made arrangements with Glynn for an abortion upon the twelfth woman, who did not see Glynn. It thus appears that there is independent testimony as to each count that Glynn acted as an intermediary.

Further similarities appear in connection with some but not all of the counts. For example, as to ten of the women there is testimony that payments for the operations were made to Glynn, either directly or through some third person, and Gallardo testified that he received a check from Glynn for the services rendered to the eleventh woman, from which it could be inferred that payment had previously been made to Glynn. As to eight or more of the women full payment was made to Glynn in advance, and as to two others he received substantial sums in advance. Although there are some differences in the evidence on the separate offenses, this does not alter the fact that there is independent testimony with respect to each count indicating that essentially the same procedure was followed in each instance, and, accordingly, the testimony of the witnesses is mutually corroborative within the principles discussed above. The corroborative evidence as to each count is complete in itself and did not require resort to the testimony of the witness who had to be corroborated for interpretation and direction. (*Cf. People* v. *Shaw*, 17 Cal.2d 778, 805 [112 P.2d 241].)

The evidence is sufficient to support the judgments on the twelve counts charging abortion and on the count charging defendants with conspiracy to commit abortion.

In support of the judgments convicting defendants of attempts to commit abortion, the People rely upon three transactions which occurred a few minutes before the police officers entered the hospital. The first of these involved a policewoman who, endeavoring to obtain evidence, met Glynn at the hospital and arranged with him for an abortion. She was accompanied by a policeman who paid Glynn $250. The policeman, at Glynn's request, left the building, and the policewoman remained in the waiting room. The other transaction involved two women who met Glynn near the hospital and accompanied him inside. They entered through a rear door, and while in a back room each of the women paid Glynn $250. They then went to the waiting room where the policewoman was sitting. Hospital cards and records were prepared for the three women by Glynn.

In our opinion this evidence does not support the convictions for attempts to commit abortions. In order to establish an attempt, it must appear that the defendant had a specific intent to commit a crime and did a direct, unequivocal act toward that end; preparation alone is not enough, and some appreciable fragment of the crime must have been accomplished. (*People* v. *Buffum,* 40 Cal.2d 709, 716 [256 P.2d 317]; *People* v. *Werner,* 16 Cal.2d 216, 221-222 [105 P.2d 927]; *People* v. *Miller,* 2 Cal.2d 527, 530-532 [42 P.2d 308].) The record shows merely preparation and does not disclose any direct, unequivocal act toward the commission of an abortion upon any of the three women. There is no evidence that Glynn or Gallardo started to provide, supply or administer any medicine or to use or employ any instrument or other means to procure the miscarriage of any of the three women. (Pen. Code, § 274.) The conduct of Glynn in arranging for operations, filling out hospital cards, and accepting money did not amount to an attempt. (*Cf. State* v. *Davis,* 319 Mo. 1222 [6 S.W.2d 609, 612]; *State* v. *Lowrie,* —— Minn. —— [54 N.W.2d 265, 266-267]; *State* v. *Lampe,* 131 Minn. 165 [154 N.W. 737, 739].)

### Other Claims of Error

Numerous claims of error are made by defendants in connection with the admission of evidence and the instruction of the jury. Some of these claims are entirely without merit, and a discussion of them would unnecessarily lengthen this opinion. One question raised by defendants has not been previously decided in this state. A witness for the People

testified on cross-examination that before she took the stand she had refreshed her memory by examining notes which she had made earlier. Defendants claim that it was prejudicial error for the court to refuse their request that she be ordered to produce the notes for inspection. Section 2047 of the Code of Civil Procedure* provides that a witness may refresh his memory by use of a writing made under certain prescribed conditions and that "in such case the writing must be produced and may be seen by the adverse party." It has been held that a similar statute applies only to the conduct of the witness while on the stand and that it does not require him to produce a writing which he consulted prior to the time he testifies. (*State* v. *Magers,* 36 Ore. 38 [58 P. 892, 893-896].) We agree with this interpretation. Section 2047 is a codification of the common law rule, and a majority of the jurisdictions applying that rule have held that production of notes for inspection may be compelled only where the witness uses them while on the stand and not where he refreshes his memory with them before being examined. (See *Goldman* v. *United States,* 316 U.S. 129, 132 [62 S.Ct. 993, 86 L.Ed. 1322]; *Lennon* v. *United States,* 20 F.2d 490, 493-494; *State* v. *Magers,* 36 Ore. 38 [58 P. 892, 893-896]; 3 Wharton's Criminal Evidence [11th ed., 1935], § 1279, p. 2147; 58 Am.Jur. 335-336; 14 Am.Jur., 893; *cf. Leonard* v. *Taylor,* 315 Mass. 580 [53 N.E.2d 705, 707, 151 A.L.R. 1002]; but *cf.* 3 Wigmore on Evidence [3d ed., 1940], § 762, p. 111; *State* v. *Deslovers,* 40 R.I. 89 [100 A. 64, 69-70]; *The Alpha,* 44 F.Supp. 809, 815.) An exception has been made in cases where a government witness refers to documents before taking the stand and the party demanding the right of inspection lays a foundation by showing that the documents are in possession of the government, were made by the government's witness and are contradictory of his present testimony as to relevant and important matters. (*Gordon* v. *United States,* 344 U.S. 414 [73 S.Ct. 369, 372-373, 97 L.Ed. 447].) No such showing has been made in the present case. Since the witness involved here did not look at her notes while she was on the stand, the

---

*Section 2047 of the Code of Civil Procedure provides: "A witness is allowed to refresh his memory respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. But in such case the writing must be produced, and may be seen by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the jury . . . "

trial court properly denied defendants' request that they be produced for inspection.

Defendants also complain of the admission in evidence of a number of conversations which, they assert, were inadmissible hearsay. We have examined the record with regard to this evidence, and, although some of the conversations may have been improperly admitted, we are of the opinion no miscarriage of justice resulted therefrom. (Const., art. VI, § 4½.)

It is contended that the court misdirected the jury by giving the following instruction: "You are instructed that every person who uses or employs any instrument or other means whatever upon a woman with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is guilty of a criminal offense. In that connection, I instruct you further that to constitute the crime of abortion it is immaterial whether the woman is pregnant or not." It is settled that the prosecution need not establish that the woman was actually pregnant, and a defendant may have the necessary intent to procure a miscarriage where he merely believes that the woman upon whom he performs an abortion is pregnant. (*People* v. *Crain,* 102 Cal.App.2d 566, 568 [228 P.2d 307]; *People* v. *Raffington,* 98 Cal.App.2d 455, 460 [220 P.2d 967]; *People* v. *Pollum,* 97 Cal.App.2d 173, 177 [217 P.2d 463]; *People* v. *Ramsey,* 83 Cal.App.2d 707, 717, 723 [189 P.2d 802].) The defendants argue, however, that the last sentence of the instruction is too broad and may have led the jury to believe that the prosecution was not required to show an intent to procure a miscarriage. Although belief that the woman was pregnant has some bearing on intent and therefore is not wholly immaterial, when the two sentences of the instruction are read together it does not appear how the jury could have been misled.

The appeals from the sentences are dismissed. The judgments and the order denying a new trial on the twelve counts charging abortion and the count charging conspiracy to commit abortion are affirmed. The judgments and the order deny a new trial on the counts charging attempt to commit abortion are reversed.

Shenk, J., Edmonds, J., and Spence, J., concurred.

SCHAUER, J., Concurring and Dissenting.—I concur in the judgment of this court insofar as it (1) dismisses the

appeals from the sentences and (2) reverses the judgments and the order denying a new trial on the counts charging attempt to commit abortion.

I dissent from that portion of the judgment which affirms the judgments and the order denying a new trial on the twelve counts charging abortion and the count charging conspiracy to commit abortion.

I disagree with all those portions of the discussion in the majority opinion relative to the definition of accomplices and the competency of the testimony of persons who in fact, and under general provisions of law, appear to be, but are held not to be, accomplices. See *People* v. *Clapp* (1944), 24 Cal.2d 835, 840-847 [151 P.2d 237] ; *People* v. *Wilson* (1944), 25 Cal. 2d 341, 351-352 [153 P.2d 720] ; *People* v. *Lima* (1944), 25 Cal.2d 573, 579 [154 P.2d 698] ; *People* v. *Harper* (1945), 25 Cal.2d 862, 877 [156 P.2d 249] ; *People* v. *Wallin* (1948), 32 Cal.2d 803, 808 [197 P.2d 734] ; *People* v. *Buffum* (1953), 40 Cal.2d 709, 728-730 [256 P.2d 317].

I furthermore do not agree with the discussion or the conclusion of the majority relative to the sufficiency of the evidence to support the judgments of conviction on any of the several counts on which the judgments of conviction are affirmed.

Carter, J., concurred.