[Crim. No. 5042.   Second Dist., Div. Three.   Nov. 24, 1953.]

THE PEOPLE, Respondent, v. ELBERT DEMARR BOSTON, Appellant.

Philip S. Schutz for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.—Defendant Elbert Boston appeals from a judgment of conviction in a jury trial of robbery of the first degree and from an order denying his motion for a new trial. The information also alleged that defendant had suffered a prior conviction. The ground of the appeal is insufficiency of the evidence to justify the verdict.

About 1:20 a. m., October 28, 1952, one Donald Nordstrom, assistant manager of a service station in Los Angeles County, had closed the station and was counting the day's receipts in a dimly lighted office. Two men, one taller than the other, entered the office, each with a silk stocking pulled over his head down to about the mouth. The taller of the two men took the money that was in front of Nordstrom and some more that was on a desk, together with some checks, the amount of the money and checks being $249. They allowed Nordstrom to walk away; he did not see an automobile but heard one being started up. He remained away from the station a short time, when he returned and called the police.

Bill C. Robinson testified that on the night of the robbery he met one Donald Dawson at Boston's home where they had gone to sell him a gun. Defendant had no money. They told him they were going to commit a robbery and he agreed to join them. They had three guns. Defendant and Dawson bought a pair of ladies' silk hose. They were in a car but stole another one they thought would be faster. Robinson and defendant went into Nordstrom's service station with the stockings over their upper faces, each having a gun, and they committed the robbery taking $165 or $170 cash which they divided. They abandoned the stolen car and picked up Robinson's car. Defendant gave them back the gun he had. Donald Dawson admitted having participated in the robbery with Robinson and a man called Dick. He testified that defendant was not with them. Upon cross-examination by the deputy district attorney he testified that he had told the former that defendant and Robinson were the two men who assisted in the robbery; he also testified he had stayed in the car and the other men entered the station. Two days after the robbery defendant started for New Jersey with three friends. He was arrested in Arkansas and waived extradition. In an automobile en route from Springdale, Arkansas, to Fort Smith, Arkansas, defendant told Police Officer Simon that he left the state because a friend had told him he was wanted for robbery and the police were staked out at his home.

Officer Baldridge of the Los Angeles Police Force testified that defendant, while under arrest in Arkansas, stated that he had stolen a car to drive to Miami but decided to go to New Jersey; on the plane, returning to Los Angeles, defendant stated: "Well, I can't say I was in the robbery; let's say I heard there was a robbery and a car ditched near Prairie and Imperial" and later "it would be closer to Century than to Imperial." He said he had seen Dawson and Robinson have three guns in a car and had told them they had better keep them out of sight or they would be picked up. He also said he would have friends to testify to an alibi for him; that he would plead guilty to theft of an automobile but not to robbery. When questioned by Officer Simon, on the way to Los Angeles, as to where he was on the night of the robbery defendant said he was at Sally's Café. When Officer Simon asked him how he knew when the robbery was, that no date had been mentioned, defendant smiled and said he was at the café. He said he had gone to his home, had seen officers

waiting in a car, had picked up a suitcase full of clothes, had stolen a car and started east. Nordstrom, when questioned as to whether he recognized anyone in the courtroom, pointed out defendant saying, ''The lower part of his face looks similar . . . his jaw and mouth . . .''; that he had seen defendant walk twice since the robbery and that his walk was similar to that of the taller man. On cross-examination he testified that he had told the arresting officers that he thought the tall man was a light Negro, judging from the shape of his lips and color. When questioned whether he was sure defendant was one of the men he answered, ''No, I am not positive.'' He testified that defendant was probably one of the men but that he could not be completely certain.

Defendant admitted having met Bill Robinson at his, defendant's, home on October 27th in company with Dawson, at which time they offered to sell him a gun which he did not buy. He testified that the three entered the Robinson car and drove to Sally's Café where they let him out. They did not mention the robbery; that he was driven home from the café at about 9:45 p. m. where he went to sleep and remained until the next morning. There was corroboration of his testimony that he was at home at the time of the robbery, and at Sally's Café earlier in the evening. He had been taken into custody and questioned about certain robberies within a week prior to October 27th but was released. He was afraid he would be arrested but was intending anyway to go to New Jersey.

It is well settled that the corroboration of the testimony of an accomplice is sufficient if it tends to connect the defendant with the commission of the crime in such a way as to reasonably satisfy the jury that the testimony of the accomplice is true. It may be sufficient even though slight, and entitled to little consideration when standing by itself, provided it tends to connect the accused with the commission of the crime. (*People* v. *Gallardo,* 41 Cal.2d 57, 62-63 [257 P.2d 29].)

The fact that Nordstrom, having pointed out defendant as one of the robbers, stated he could not be completely certain, did not rob his testimony of all weight or credibility. He stated his reasons for identifying defendant and his failure to testify positively indicates that he was a conscientious and scrupulous witness. Aside from the testimony of Nordstrom there was other corroborating evidence. Defendant admittedly was friendly with, and in the

company of, the confessed robbers the night of the robbery; he left the state when he learned that the police suspected him of the robbery and were looking for him. This was a circumstance tending to prove consciousness of guilt. (8 Cal. Jur., § 158.) There was ample evidence that three men participated in the robbery, one of them remaining in the car. The third man, if he was not defendant, was not identified other than vaguely as a fellow known only as Dick. Defendant did not testify there was any such person with them on the night of the robbery. Moreover, the probability that Nordstrom was correct in his identification of defendant as one of the robbers was strengthened by the jury's disbelief of the testimony of defendant and his witnesses that he was at home when the robbery took place. The evidence was legally sufficient to establish the guilt of the defendant.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.